### Richmond

SHEVEL'S, INC. - CHESTERFIELD

V.

SOUTHEASTERN ASSOCIATES, INC.

Record No. 811224.

September 7, 1984.

Present: All the Justices.

*Augustus C. Epps, Jr. (Michael L. Soffin; Christian, Barton, Epps, Brent & Chappell,* on briefs), for appellant.
*Frederick T. Gray; Evelyn G. Tucker (Williams, Mullen, Christian, Pollard & Gray,* on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

This is a landlord-tenant dispute concerning the tenant's contractual liability for dues to a shopping center merchants' association. Southeastern Associates, Inc., the landlord, was developer of a shopping center known as Chesterfield Mall. Shevel's, Inc. — Chesterfield was a tenant operating a men's clothing store in the mall. The landlord brought a civil warrant in the general district court against the tenant for dues claimed to be owed by the tenant to the merchants' association. All tenants, pursuant to their respective leases, were required to belong to the association. The tenant removed the case to the circuit court, which ordered the landlord to file a bill of particulars and the tenant to file responsive pleadings thereafter.

The landlord's bill of particulars specified that the tenant's liability was based upon the terms of its lease, which required the tenant to maintain membership in the merchants' association and to pay "such reasonable assessments as should be fixed from time to time by the Association for the purpose of creating and maintaining a fund for the general promotion and welfare of the Center as a whole." The tenant responded by filing grounds of defense, containing affirmative defenses. Among other things, the tenant alleged that the language of the lease did not state the true agreement of the parties, and that the lease took its existing form by reason of mutual mistake or, in the alternative, unilateral mistake by the tenant accompanied by fraud or inequitable conduct by the landlord.

■ On the tenant's motion, the case was transferred to the chancery side of the court, apparently because the tenant's grounds of defense concluded with a prayer that the chancellor reform the lease to reflect the true agreement of the parties. The tenant filed no cross-bill. The landlord filed a motion to strike the tenant's grounds of defense, contending that reformation could not be invoked by a defensive pleading; it was only available as "an independent cause of action." The motion to strike was denied. The landlord assigns cross-error to the transfer from law to equity and the court's action in overruling its motion to strike.*

The case was tried *ore tenus*. The landlord called M. Shevel Siff, the tenant's president, as an adverse witness, and then offered the testimony of Cecil D. Jeter, its own president. After this testimony, the landlord rested and made a motion for summary judgment. The court granted the motion, ruling that Siff's testimony precluded the tenant, under the doctrine of *Massie v. Firmstone*, 134 Va. 450, 114 S.E. 652 (1922), from taking any position more favorable than permitted by the "four corners of the lease," and that the lease, which was in evidence, clearly entitled the landlord to recover the disputed dues. The tenant had no opportunity to present its case.

The tenant argues that summary judgment was not available in equity, that *Massie v. Firmstone* was inapplicable, and that it should have been given an opportunity to prove its allegations concerning partial integration, mutual mistake, or unilateral mistake accompanied by fraud.

The dispute is rooted in a two-year period of negotiations between Siff and Jeter which preceded Siff's decision to lease space in Chesterfield Mall. In a series of letters and conferences, Siff adamantly took the position that he would pay no more than $.10 per square foot of leased space as dues to the merchants' association. Jeter informed him that the rate had been set at $.30, and that uniformity among the tenants was imperative. When this dis-

---

* The tenant moved to dismiss on the ground that the pleadings showed the merchants' association to be the proper party plaintiff, rather than the landlord. This motion was denied. The tenant moved to add the merchants' association as an involuntary plaintiff. This motion was also denied. The court ruled that the landlord could properly assert claims for dues to the merchants' association and that the latter was not a necessary party. These rulings were made at a hearing, the transcript of which was not made a part of the record. Accordingly, we shall not act upon the tenant's assignments of error relating to them. *Waskey v. Lewis*, 224 Va. 206, 212, 294 S.E.2d 879, 882 (1982). These rulings have become the law of the case.

agreement became the final barrier to an agreement, Jeter wrote to Siff. He proposed that the desires of both parties be accommodated by setting the dues at $.30 per square foot in the lease and by giving the tenant a concealed credit of $.20 per square foot by adjustment of the rent so that the 5% rental based on the tenant's sales would begin only after the $.20 per square foot credit had been absorbed. Siff testified that Jeter explained that this would give the dues the appearance of uniformity for the benefit of the other tenants, but would actually require Shevel's to pay no more than $.10 per square foot in dues.

Siff agreed to the arrangement, and the landlord caused the proposed lease to be prepared. Siff signed it on behalf of the tenant after reviewing it carefully with his attorney. Siff testified that he was satisfied that the lease was consistent with his agreement with Jeter concerning dues, because the lease provided that the landlord's 5% override on the tenant's sales would begin only after sales exceeded $17,500.00, which amounted to a credit to the tenant of exactly $.20 per square foot. As Jeter stated in his letter to Siff, this was the device by which the dues dispute would be resolved. It resulted in the tenant's payment, in reality, of $.10 per square foot as dues. The lease itself was silent on the subject of dues. Siff regarded this as an indication that the dues dispute had been settled through the exchange of correspondence with Jeter, and that the issue of dues was not affected by the lease, except insofar as the rent provision was modified to be consistent with the separate agreement concerning dues.

The tenant's lease term began in November 1976. Later that month, the merchants' association's board of directors doubled the rate of dues to $.60. In 1978, the rate was changed to $.45, where it remained at the time of trial. Notwithstanding these changes, the tenant paid dues at the $.30 rate each month, in reliance upon its alleged separate agreement with the landlord. For the reasons stated, this amounted to an effective rate of $.10. The landlord contended that the lease was the sole agreement between the parties, that the merchants' association's board had the right to set dues in its discretion, and that the landlord was authorized to collect arrears for the benefit of the association. The landlord brought this suit to collect the claimed arrears.

As noted above, the lease specifically provides that the tenant shall pay the merchants' association such "reasonable assessments" as shall be fixed from time to time. The by-laws of the

merchants' association, which are in evidence, make clear that "dues" and "assessments" are not the same. Article III of the by-laws is captioned "Dues and Assessments." Section 1 relates to dues and provides that they are to be paid monthly. Section 2 relates to assessments and provides for *ad hoc* imposition, from time to time, in the discretion of the board of directors. When assessed, the tenants must pay them in such ratio as each tenant's dues, for the previous year, bear to total dues.

Although the foregoing lease provisions are consistent with the tenant's claim that a separate agreement exists concerning dues and that the lease is only a partial integration of the parties' true agreement, the lease concludes with a clause providing that it sets forth all agreements between the parties "relative to the demised premises" and that there are no "promises, agreements, conditions, or understandings, either oral or written, expressed or implied, between them other than are herein set forth."

The tenant contends that it was induced to enter into the lease by the landlord's promise concerning the dues; that it at all times intended that the lease be only a partial integration of the parties' true agreement; that to the extent the above-quoted language is inconsistent with that agreement, it was inserted through mutual mistake; alternatively, if the landlord employed the language with the purpose of thereby abrogating the separate agreement concerning dues, then the language was inserted through unilateral mistake on the tenant's part, accompanied by fraud or inequitable conduct on the landlord's part; and that in either event the tenant should be entitled to show that the above-quoted language fails to express the true agreement of the parties.

Summary judgment is a drastic remedy which is available only where there is no material fact genuinely in dispute. It was unknown at common law. M. Burks, Pleading and Practice § 189, p. 303 (4th ed. 1952). It applies only to cases in which no trial is necessary because no evidence could affect the result. *Fire Assurance Corp.* v. *Cohen*, 203 Va. 810, 814, 127 S.E.2d 399, 402 (1962). Rule 3:18, which alone governed summary judgments at the time of trial, applies only to actions at law. Rule 3:1. There was, at that time, no provision for summary judgment in chancery causes, T. Boyd, E. Graves and L. Middleditch, Virginia Civil Procedure § 9.4, p. 375 (1982), and thus it was error to grant it. Rule 2:21, effective July 1, 1983, extends the remedy of summary judgment to equity. As a purely procedural rule, it affects pending

cases. Its promulgation, however, does not render the error harmless, for the reasons hereinafter expressed.

■ We agree with the tenant's position that the doctrine of *Massie* v. *Firmstone* was erroneously applied. The doctrine, by definition, applies only to "statements of fact" made by a litigant, which refer to "facts within his own knowledge" and to "the necessary inferences therefrom." *Ford Motor Co.* v. *Bartholomew*, 224 Va. 421, 431, 297 S.E.2d 675, 680 (1982); *Baines* v. *Parker and Gladding*, 217 Va. 100, 104, 225 S.E.2d 403, 406-07 (1976). *See also Travis & Ludwig* v. *Bulifant*, 226 Va. 1, 5, 306 S.E.2d 865, 866 (1983). The landlord evidently relied on *Massie*, in support of the motion for summary judgment, for the sole purpose of persuading the court that the tenant was bound by the terms of the lease which its president had admittedly signed: "He signed the lease. He was in agreement with the provisions. He is bound by his testimony, by his lease." The only "fact within his own knowledge" by which the tenant's president's testimony arguably bound the tenant was the fact of execution of the lease. The landlord contended that the tenant should not be heard to say that the true agreement of the parties was other than as expressed in the written lease.

This argument confuses the parol evidence rule with the doctrine of *Massie* v. *Firmstone*. Therefore, because the case turns upon principles governing certain exceptions to the parol evidence rule, and because it must be remanded, we must discuss these principles even though the parties, and evidently the trial court, erroneously confined their consideration to the doctrine of *Massie* v. *Firmstone*.

■ Here, the tenant did not seek to vary or explain, by parol, the terms of the written lease. Rather, the tenant took the position that the parties had reached a different agreement, not fully integrated into the writing, or that the writing failed to express their true agreement. Parol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional written instrument. *Amos* v. *Coffey*, 228 Va. 88, 320 S.E.2d 335 (1984); *McComb* v. *McComb*, 226 Va. 271, 274, 307 S.E.2d 877, 879 (1983).

There are, however, well-recognized exceptions which will prevent the application of the rule. One of these is the doctrine of partial integration. "Where the entire agreement has not been re-

duced to writing, parol evidence is admissible, not to contradict or vary its terms but to show additional independent facts contemporaneously agreed upon, in order to establish the entire contract between the parties." *Renner Plumbing* v. *Renner*, 225 Va. 508, 515-16, 303 S.E.2d 894, 898 (1983) (quoting *High Knob, Inc.* v. *Allen*, 205 Va. 503, 506, 138 S.E.2d 49, 52 (1964)).

Another related exception is the collateral contract doctrine. "[T]he parol evidence rule does not exclude parol proof of a prior or contemporaneous oral agreement that is independent of, collateral to and not inconsistent with the written contract, and which would not ordinarily be expected to be embodied in the writing." *Pierce* v. *Plogger*, 223 Va. 116, 119, 286 S.E.2d 207, 209 (1982) (also quoting *High Knob*).

Additional exceptions exist where the written contract is alleged to have been procured by fraud, *Baker* v. *Berry Hill Co.*, 109 Va. 776, 782, 65 S.E. 656, 659 (1909); or is based upon mutual mistake — "[e]quity should give effect to the true intent of the parties, despite a contrary intent reflected by a writing the parties mistakenly believed to monument their bargain," *Gibbs* v. *Price*, 207 Va. 448, 449-50, 150 S.E.2d 551, 552 (1966), or "where there is mistake on the part of one party and misrepresentation and fraud perpetrated by the other. . . ." *Larchmont Properties* v. *Cooperman*, 195 Va. 784, 792, 80 S.E.2d 733, 738 (1954).

The tenant's pleadings invoke these exceptions as defenses to the landlord's claim. The tenant, therefore, is not bound by "the four corners of the lease," as the trial court held. The burden on a party seeking to impeach an instrument he has approved by his signature is a heavy one, *see Gibbs* v. *Price*, 207 Va. at 450, 150 S.E.2d at 552, but where he had pleaded one of the affirmative equitable defenses mentioned above, he is entitled to a day in court and an opportunity to carry his burden.

The clause providing that the lease contains the entire agreement of the parties, and purporting to exclude any other agreement, stands upon no different footing than any other part of the instrument. It may impose upon the tenant a heavy burden of persuasion, and may cause the fact-finder to doubt its claim of partial integration, collateral contract, fraud, or mistake, but such a clause does not estop a party who has pleaded these affirmative defenses from attempting to prove them, and it is no bar to the admission of parol evidence for that purpose. *Stanard Tilton Milling Co.* v. *Mixon*, 243 Ala. 309, 312, 9 So.2d 911, 913 (1942).

Because the tenant raised the above defenses in its pleadings, it would have been error to grant summary judgment in the landlord's favor at the close of the landlord's case, even if summary judgment had then been available in an equity case. The extension of the remedy to equity cases in 1983, therefore, did not render the error harmless.

We find no merit in the landlord's assignment of cross-error. The case was transferred to the chancery side of the court because the tenant's prayer for the affirmative equitable relief of reformation, although contained in a defensive pleading, was treated by the court as a cross-bill. Upon transferring the case to equity, the court entered an order requiring the landlord, within fourteen days, to file its responsive pleadings to "defendant's affirmative defenses." The landlord complied, pleading laches and other equitable defenses to the tenant's prayer for reformation. Thus, pursuant to the court's order, the parties also treated the answer as a cross-bill. These proceedings correctly placed the landlord in a defendant's position as to the claim for reformation and resulted in a proper allocation of the order of pleadings and the burden of proof.

Traditionally, in Virginia, where a defendant has set up a claim for affirmative relief in a defensive pleading, the court, in order to do complete justice between the parties and avoid a multiplicity of suits, may in its discretion treat an answer as a cross-bill by appropriate order. In such a situation the parties must comply with Rules 2:13 and 2:14, as was done here. *Adkins* v. *Edwards*, 83 Va. 300, 305-06, 2 S.E. 435, 437 (1887); *Mettert's Adm'r.* v. *Hagan*, 59 Va. (18 Gratt.) 231, 234 (1868). J. Lile, Equity Pleading and Practice § 156, p. 89-90; § 237, p. 135 (3d ed. 1952).

For the reasons stated, the decree will be reversed and the case remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*