## J.E. ROBERT COMPANY

### V.

## J. ROBERT CO., INC., OF VIRGINIA

Record No. 830368

April 25, 1986

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Thomas, JJ., and Gordon, Retired Justice.

*G. David Fensterheim (David Povich; Stephen C. Greenberg; Williams and Connolly; Murphy, McGettigan and West*, on briefs), for appellant.
*William B. Moore (Kendrick, Gearheart, Aylor & Lockowandt*, on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal concerns a contract dispute between father and son. To resolve the dispute we must consider the parol evidence rule and matters pertaining to fraud in the inducement to contract.

Initially, J. E. Robert, Sr., and J. E. Robert, Jr., worked together in a company started by the father and known as J. Robert Co., Inc. of Virginia (Robert of Virginia). By contract dated February 26, 1981, with Marina Associates, Inc., Robert of Virginia became the exclusive sales agent for 282 condominium units at Marina Towers, a condominium development. Pursuant to that contract, Robert of Virginia was to receive "a net commission of three percent (3%) of the gross selling price of each unit as a brokerage commission." The contract provided that it could be terminated by either party upon 30 days notice, until the opening of the sales office; after that time, 90 days notice was required to terminate the contract.

Before sales of the condominiums began, the son left Robert of Virginia. He took with him, among other things, the Marina Associates account and several of the sales people that had worked for Robert of Virginia.

After Robert, Jr.'s departure, his father contacted him, through an intermediary, concerning the commissions from the sale of the condominium units. The father proposed that Robert of Virginia receive a ½% commission on the sale of the units. In return for

this, the father proposed to assign the Marina Associates contract to his son or his son's new company.

Using the same intermediary, the son responded to his father's proposal by replying that he would agree to the ½% commission payment only if the father would agree not to penalize salesmen who left Robert of Virginia to work with Robert, Jr., by withholding 25% of commissions due them from Robert of Virginia. On hearing his son's condition, Robert, Sr. became angry and stated that he had already given his word that he would not penalize the salesmen who left with his son and that he was insulted that his son would ask him to put that promise in writing.

Thereafter, Robert, Sr. sent his son a proposed letter agreement, dated May 20, 1981, that made no mention of the payment of commissions to former salesmen of Robert of Virginia. Robert, Jr. testified that because of his father's promise, transmitted through the intermediary, he signed the letter agreement with the understanding that his father would not withhold 25% of the commissions due former salesmen.

Robert, Jr. and his new company made sales of the Marina Towers condominiums and, for a time, paid Robert of Virginia its ½% commission as set forth in the letter agreement. However, after he had made two commission payments to Robert of Virginia, Robert, Jr. learned that 25% of commissions owed salesmen who had left Robert of Virginia was being withheld. At that point, Robert, Jr. stopped making commission payments to Robert of Virginia.

Robert of Virginia sued Robert, Jr. and his new company, demanding payment of the ½% commissions on the sale of the condominiums. Robert, Jr. asserted several defenses including the following: (1) that as a condition precedent to the execution of the letter agreement of May 20, 1981, Robert of Virginia agreed it "would not deduct or withhold any portion of the commissions which may become due and payable to salesmen and former salesmen of the Plaintiff who are entitled to the commissions" and that this condition was breached; (2) that the breach of the condition precedent represents a failure of consideration; and (3) that Robert, Jr. was fraudulently induced to enter the contract with Robert of Virginia because of fraudulent representations by Robert, Sr. "as to his then present intentions with respect to the payment of commissions to salesmen."

Robert of Virginia moved for summary judgment. Prior to trial, the court granted the motion for summary judgment with regard to the condition precedent defense. In a letter opinion dated Au-

gust 20, 1982, the trial court ruled "that the 'no-penalty agreement' is inconsistent with the written instrument and inadmissible." This was a ruling, in effect, that to permit proof of the alleged condition precedent would violate the parol evidence rule.

The case then proceeded to trial where Robert, Jr. was allowed to adduce evidence concerning his defense of fraudulent inducement. At the close of all the evidence, the trial court granted Robert, Sr.'s motion to strike Robert, Jr.'s evidence of fraudulent inducement. The trial court predicated its ruling upon two grounds: (1) that the misrepresentation claimed to have been made by the father was not material to the questions before the court because Robert, Jr. could not assert as a basis of rescinding a contract with his father a claim that the salesmen may have had against Robert, Sr.; (2) that the misrepresentation did not work to Robert, Jr.'s detriment and did not cause him any damage because one would "have to go pretty far to come to the point to believe that that contract, that listing agreement was actually the property" of Robert, Jr. and not that of Robert of Virginia.

The trial court eliminated the first of Robert, Jr.'s defenses without hearing any evidence. Consequently, the correctness of that parol evidence ruling must be considered in light of the allegations contained in the pleadings. Moreover, the factual allegations of Robert, Jr. must be taken as true. When the facts are so reviewed, it is plain that Robert, Jr. contended that the May 20, 1981 letter agreement either was not the complete agreement of the parties or was a separate collateral agreement. In either case, Robert, Jr. says he should have been permitted to prove his defense, and that he should not have been summarily foreclosed from defending himself on this issue. We agree.

■ The parol evidence issue in this appeal is controlled by our decision in *Shevel's, Inc.* v. *Southeastern Assoc.*, 228 Va. 175, 320 S.E.2d 339 (1984). There, Shevel's was a party to a lease which provided that Shevel's would maintain membership in a merchant's association at the shopping center where its store was located and that it would pay "such reasonable assessments as should be fixed from time to time by the" merchants association. The landlord of the shopping center claimed that Shevel's violated its lease by refusing to pay the assessments as required by the lease. Shevel's contended that the lease did not state the true agreement of the parties. The matter was heard by the trial court sitting in equity. At the close of plaintiff's case, summary judgment was entered for the landlord; the trial court was of the view that the lease gave the landlord a clear right to recover from

Shevel's. As a result, Shevel's was not given an opportunity to prove what it claimed was the true agreement. We reversed.

Shevel's submitted that had it been allowed to prove its defense it would have shown that it had negotiated with the landlord and adamantly refused to pay more than $.10 per square foot in dues to the merchant's association and that the landlord had agreed to that figure but had devised a method to make it appear that Shevel's paid the same dues as any other store at the shopping center. According to Shevel's, the landlord wrote a letter outlining the procedure that would ensure that Shevel's would pay no more than $.10 per square foot. We noted that the lease was silent on the subject of dues and that dues were unaffected by the lease save for a modification of Shevel's rent provision which placed the lease in harmony with the separate agreement concerning dues. When the merchants association voted to increase the dues so that Shevel's would be required, in essence, to pay more than $.10 per square foot, Shevel's refused to pay.

Though we found the lease consistent with Shevel's claim of a separate agreement, we pointed out that the lease contained a merger or complete agreement clause. Our focus then was on whether parol evidence was admissible in the face of a lease silent on the subject matter of an alleged separate agreement yet stating that it was the complete agreement of the parties. We said such evidence was admissible.

In *Shevel's* we said parol evidence was admissible for several reasons, including the fact that "the tenant took the position that the parties had reached a different agreement, not fully integrated into the writing, or that the writing failed to express their true agreement." 228 Va. at 182, 320 S.E.2d at 343. We were careful to note in *Shevel's* that "the tenant did not seek to vary or explain, by parol, the terms of the written lease." *Id.*, 320 S.E.2d at 343.

In the instant appeal, the written agreement is silent as to an agreement that the father would not withhold commissions from former salesmen. Further, it does not contain a merger or complete agreement clause. Moreover, though the trial court concluded that the alleged oral agreement was inconsistent with the written instrument, it did not explain how it arrived at its conclusion and it reached that conclusion not on the basis of testimony but simply by a comparison of the cold pleadings and attached exhibits. When summary judgment has been granted we must view the evidence in the light most favorable to the party against whom summary judgment was granted. From that standpoint, we

do not see the inconsistency which was the foundation for the trial court's ruling. In our view, proof of an oral agreement not to withhold commissions otherwise owed to salesmen would not vary, contradict, add to, or explain the written agreement concerning payment to Robert of Virginia of a ½% commission on Marina Tower sales. Thus, it was error to grant summary judgment against Robert, Jr. based on the parol evidence rule because doing so prevented him from proving that the written agreement was not the complete agreement of the parties.

■ *Shevel's* also points out exceptions to the parol evidence rule that have relevance here. There, we said that the rule does not bar proof of a prior or contemporaneous independent collateral agreement that is not inconsistent with the written contract. 228 Va. at 183, 320 S.E.2d at 343; *Pierce* v. *Plogger*, 223 Va. 116, 119, 286 S.E.2d 207, 209 (1982). Robert, Jr. maintained the oral agreement was a separate, collateral agreement. Consequently, there existed another ground upon which he should have been allowed to make out his defense.

■ A further exception exists in situations where a contract is claimed to have been procured by fraud. In such situations, parol evidence has been allowed to establish the true agreement between the parties. 228 Va. at 183, 320 S.E.2d at 343-44; *Baker* v. *Berry Hill Co.*, 109 Va. 776, 782, 65 S.E. 656, 659 (1909). Here, Robert, Jr. also claimed that the oral agreement was used to induce the written agreement and that the written agreement was procured by fraud. By this approach, as well as the others, Robert, Jr. should have had the opportunity to prove, in his defense, the oral agreement.

The cases relied on by Robert, Sr. on the parol evidence issue are all distinguishable. For example, in both *Walker & Laberge Co.* v. *Bank*, 206 Va. 683, 146 S.E.2d 239 (1966), and *Harvey* v. *R., F. & P. Ry. Co.*, 162 Va. 49, 173 S.E. 351 (1934), the trial courts heard evidence before concluding that the parol agreements were in direct contravention of the written agreements which the proponents of the parol evidence sought to overcome. The instant appeal involves silence in the written agreement, not direct contradiction between the contents of the writing and the alleged oral agreement.

■ With regard to the fraudulent inducement issue, Robert, Jr. was required to prove that his father promised not to withhold commissions from former salesmen, that at the time he made the promise he intended not to perform, and that the promise was made to induce Robert, Jr. to act to his detriment. *See Colonial*

*Ford* v. *Schneider*, 228 Va. 671, 677, 325 S.E.2d 91, 94 (1985);
*Sea-Land Service, Inc.* v. *O'Neal*, 224 Va. 343, 351, 297 S.E.2d
647, 651-52 (1982); *Lloyd* v. *Smith*, 150 Va. 132, 145-47, 142
S.E. 363, 365-66 (1928). Moreover, Robert, Jr. was required to
prove the alleged fraud by clear, cogent, and convincing evidence.
*See Sea-Land Service, Inc.*, 224 Va. at 351, 297 S.E.2d at 651-52.

Of the several proof requirements set forth above on the ques-
tion of fraud, the only failing ascribed to Robert, Jr. was that he
did not prove any detriment or damages to himself. The trial court
struck defendant's evidence on this issue, in part, because it was of
the view that it was hard to believe that the Marina Towers con-
tract was the property of the son and not the father. Put another
way, the trial court was of the view that if it could be believed
that the Marina Towers contract belonged to Robert, Jr., then
Robert, Jr. gave up something of value when he gave his father's
company a ½% commission and retained a 2 ½% commission for
himself instead of the 3% commission he could have had.

In our opinion, the trial court erred in holding, as a matter
of law, that reasonable men could not conclude that the Marina
Towers contract belonged to Robert, Jr. There was ample evi-
dence upon which a trier of fact could have reached just that con-
clusion. Perhaps the most important testimony on that issue came
from James Comparato, who signed the exclusive sales contract
on behalf of Marina Associates. He testified that after he learned
of the split between father and son he told Robert, Sr., "I in-
tended and would like very much to continue . . . with his son,
and felt very strongly that that was the only approach I needed to
take at this point in time." On further questioning Mr. Comparato
said, "I was quite adamant about the entire matter, and told Mr.
Robert, Sr. that it was my intention to use Joe, Jr., and hopefully
he and Joe could work something out." Comparato also said that
after a meeting with Robert, Sr. to discuss the breakup with Rob-
ert, Jr., Comparato and his partners "determined that Joe, Jr. was
who we wanted to represent us in the sales force, on no uncertain
terms."

In addition to the foregoing, on the issue whether the sales con-
tract actually belonged to Robert, Jr., the trial court made no
mention of language contained in the very agreement on which
Robert, Sr. brought suit. There, in the first paragraph of a writing
from Robert, Sr. to Robert, Jr. is this language: "we are informed
by Marina Associates, Inc., that it wishes you and the sales per-
sonnel who have staffed the sales office at the project to continue
the sales and marketing program." This statement very nearly

concedes the point that the contract was Robert, Jr.'s. At the very least, when considered along with the testimony of Robert, Jr. and Comparato, it provides evidence upon which the jury could have believed that the contract for the sale of the Marina Tower's condominiums was Robert, Jr.'s property. Consequently, the trial court erred in taking the case from the jury on this point.

The other reason the trial court gave for striking defendant's evidence of fraudulent inducement was the court's view that in a suit brought by Robert, Sr. to enforce a written contract for a ½% commission on condominium sales, his son could not defend by pointing out that Robert, Sr. had failed to pay money to various salesmen. The trial court seemed to be of the view that failure to pay salesmen had nothing to do with Robert, Jr. because he did not stand to receive money if the salesmen were paid or lose money if they were not. The trial court described this situation as one involving a lack of materiality.

We discussed the meaning of the word "materiality" in *Packard Norfolk* v. Miller, 198 Va. 557, 95 S.E.2d 207 (1956), a case where we upheld the rescission of a contract to purchase a car. In *Packard*, we concluded that the purchasers of the automobile had been fraudulently induced to enter the contract. There, we stated that to constitute fraud the facts either misrepresented or concealed had to be material facts which substantially affected the interests of the person allegedly defrauded. With regard to the meaning of materiality we said, " 'a fact is material when it influences a person to enter into a contract, when it deceives him and induces him to act, or when without it the transaction would not have occurred.' " 198 Va. at 563, 95 S.E.2d at 211-12 (quoting 23 Am. Jur., *Fraud and Deceit*, § 111 (1939), p. 892, 8 M.J., *Fraud and Deceit*, § 7, p. 699).

Here, Robert, Sr.'s statement that he would not withhold commissions from salesmen who left Robert of Virginia to work with Robert, Jr. influenced Robert, Jr. to enter the May 20, 1981 letter agreement. If the reason that Robert, Jr. agreed to the May 20 agreement was the promise from his father that commissions would not be withheld, then withholding of commissions by Robert, Sr. is something about which Robert, Jr. could legitimately complain. The fact that Robert, Jr. would not receive a portion of the commissions paid to his salesmen does not mean that he would not benefit in nonmonetary ways from his workers' receiving the commissions. Thus, Robert, Sr.'s misrepresentation was material. The trial court erred in holding otherwise.

Robert of Virginia made several assignments of cross-error. However, they are either premature or without merit. First, it complains that the trial court erred in allowing Robert, Jr. to amend his answer to assert fraudulent inducement as a defense. However, trial courts have broad discretion in granting leave to amend pleadings. Rule 1:8. Robert of Virginia does not explain how the court abused its discretion in this regard, therefore, we reject the first assignment of cross-error.

Second, it complains that the trial court erred in permitting Robert, Jr. to proceed on a theory of rescission where such relief was neither supported by the pleadings nor sought by the defendant. The answer to this assignment of cross-error is that the trial never reached the stage where a remedy would be determined in the event the jury believed Robert, Jr.'s defenses. The trial was cut short. Questions of remedy must be taken up with the trial court on remand.

Third, it contends the trial court erred in not granting summary judgment on its behalf before trial. There is no merit to this assignment of cross-error. This entire case must be retried.

Fourth, it complains that Robert, Jr.'s new company should not have been allowed to raise the defense of fraudulent inducement since the contract with Robert of Virginia was signed by Robert, Jr. and not his new company. Because no reasons are advanced by Robert, Sr. to explain to the Court why the action complained of is erroneous, we reject this assignment of cross-error.

In light of all the foregoing, the judgment of the trial court will be reversed and the case remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*