## CIRCUIT COURT OF FREDERICK COUNTY

Garland R. Frye, Jr., et ux.

v.

Linda Scheidemantle et al.

October 12, 1987

Case No. C-85-172

By JUDGE ROBERT K. WOLTZ

This is a suit to rescind a deed of conveyance from the Defendant, Linda Wassam (now Scheidemantle) to the Complainants Frye and wife (Frye) alleging a fraud perpetrated by the Defendants on the Complainants. As a consequence, rescission is also asked of the purchase money deed of trust and bond secured by it given by Frye to secure Scheidemantle the balance of the purchase price, and to reimburse Frye for expenditure of certain costs and expenses claimed as stemming from the alleged fraud. The deed of trust trustees are joined as parties.

December 20, 1983, Scheidemantle entered into a contract with Valley Realty, realtors, giving it the exclusive right for a specified period of time to sell certain real estate owned by her. The property consisted of nineteen acres which could be sold as a whole or in two tracts of nine and ten acres. The contract further provided Valley Realty would submit the listing to a local multiple listing service for distribution to members of that service, any one of which was authorized to sell the property. On the face of this contract were certain

data concerning the property. This information included brief description and location of the property, directions to it, the acreages and their list prices. The nineteen acres was listed for twenty-eight thousand five hundred, showing beside it "Well & Septic." Then the two parcels were noted separately, nine acres for nine thousand and ten acres for nineteen thousand five hundred dollars. Beside the latter also appeared the notation "Well & Septic." This contract contained the following provision:

> It is expressly understood the property data herein listed are representations of the Owner and are correct to the best of Owner's knowledge. The Owner hereby authorizes the Realtor to quote those Owner representations to prospective Purchasers.

The essentials of these data including sale prices and the notations of "Well & Septic" were then published in the multiple listing book for a period in excess of two months and in that manner publicized among the members of the multiple listing service.

In January, 1984, through the salesman of Valley Realty, Frye offered to purchase the ten acre tract for fifteen thousand dollars. Because of the well and septic system, the salesman felt Scheidemantle would reject the offer and did not convey it. About two weeks later, another real estate salesman approached Frye suggesting he had an available property in the multiple listing service meeting his requirements. Frye's inspection of the property revealed a drain pipe which he assumed to be a sewage pipe running from the house trailer formerly occupied by Scheidemantle into the ground. Two weeks later on February 14, 1984, Frye offered through this agent fifteen thousand dollars for the ten acre tract, which offer was accepted by Scheidemantle resulting in a written contract. This contract made no mention of a well or septic system. March 3, 1984, Scheidemantle conveyed the property to Frye, and Frye gave a deed of trust on the property securing payment of a bond in the amount of twelve thousand dollars representing balance of purchase price.

In September, 1984, Frye listed the property for sale and received a purchase offer which was subject

to confirmation of a septic system. Frye next discovered that there was no record of an approved septic system at the local health department. Frye then engaged an excavator to locate the system. The result was that the pipe leading from the trailer into the ground ran for a distance underground to a point above the ground and then continued for a distance on the ground to its point of termination. No septic system components were discovered during the excavation. Shortly thereafter Frye caused holes to be dug in the property for the purpose of testing the soil for percolation. A health department sanitarian then examined the property and found the soil unsuitable for a sewage disposal system permit.

Under these circumstances, I am of opinion that the rescission prayed for should be granted as a result of the perpetration of a fraud on Frye.

Fraud is the false representation by words or conduct of a fact as true which is actually false, leading a reasonable man to believe the fact is true, the representation meant to be acted upon, and the person to whom the misrepresentation is made acting on it believing the false representation of fact to be true. *McDaniel v. Hodges*, 176 Va. 519 (1940). The false representation must relate to an existing or past fact, not promises or future events nor be mere expressions of opinion such as "sales talk." *Soble v. Herman*, 175 Va. 489 (1940); *Kuczmanski v. Gill*, 225 Va. 367 (1983). The misrepresented fact must be material and "a fact is material when it influences a person to enter into a contract, when it deceives him and induces him to act, or when without it the transaction would not have occurred." *J. E. Robert Co. v. J. Robert Co., Inc.*, 231 Va. 338, 345 (1986), quoting *Packard Norfolk v. Miller*, 198 Va. 557 (1956). Thus the party injured must rely on the false representation and as a consequence act upon it. *Id.*

Here Frye made known his needs and requirements to Scheidemantle's real estate agents. He had no interest in the one parcel not listed as having a well and septic system. The agents dealt with him on the basis of a presently existing septic system. That specific description was made by Scheidemantle in her agency contract with Valley Realty with knowledge that the description would be used for multiple listing purposes and by any real estate

agents using that service. The uncontroverted evidence is that this representation was false. It is also clear that Frye bought in reliance on the representation.

But argument may be made to the exoneration of Scheidemantle on the basis of the doctrine of *caveat emptor.* This common law doctrine was declared in force with respect to the purchase of real estate in this jurisdiction in *Bruce Farms v. Coupe*, 219 Va. 287 (1978), though prior erosion by statute is to be found in Va. Code § 55-79.79, regarding warranties as to new condominium units and subsequent erosion by statute in Va. Code § 55-70.1, implying a warranty of fitness by the vendor of new homes. Though involving an entirely different situation, a statement from *Broaddus v. Broaddus*, 144 Va. 727, 748 (1925) is apropos:

> Persons cannot close their minds to every avenue of information and knowledge, benumb their acquisitive instinct with indifference, and subsequently expect the courts to relieve them from their self-imposed ignorance.

*Costello v. Larsen*, 182 Va. 567 (1944), a case involving fraud and deceit, at page 571 quotes 2 Kent, Commentaries, 485 thus:

> The common law affords to everyone reasonable protection against fraud in dealing, but does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information.

The case further at pages 571 and 572 quotes Cooley on Torts, 487 as follows:

> Where ordinary care and prudence are sufficient for full protection, it is the duty of the party to make use of them. Therefore, if false representations are made regarding matters of fact, and the means of knowledge are at hand and equally available to both parties, and the party, instead of resorting to them,

sees fit to trust himself in the hands of one whose interest it is to mislead him, the law, in general, will leave him where he has been placed by his own imprudent confidence.

While "a purchaser is bound to discover the true condition for himself if he has information which would excite the suspicion of a reasonably prudent man," *Horner v. Horner*, 207 Va. 860 (1967), I find Frye had no information by which his suspicion should have been excited. If Frye's suspicion should have been excited, then his viewing of the pipe leading from the house trailer down into the ground would have a strong tendency to allay suspicion in that regard. *Horner* states an exception "that the vendor must not say or do anything to throw the purchaser off his guard or to divert him from making the inquiries and examination which a prudent man ought to make." *See also, Ware v. Scott*, 220 Va. 317 (1979), and *Armentrout v. French*, 220 Va. 458 (1979).

*Caveat emptor* as explicated by *Bruce Farms* and *Kuczmanski, supra*, puts an onus on purchaser to use ordinary care to discover defects in improvements to realty before purchasing it. Where information on the subject is equally available to purchaser and seller, purchaser at his own risk relies on representations of the seller. *Id.* One might say that Frye's prospective purchaser who would not buy until obtaining special assurance from the health department concerning the septic system acted more prudently than Frye, and Frye should have taken the same action prior to his purchase. Obviously, Frye was not as prudent in investigating as his prospect was, but under the circumstances, he used ordinary care.

In any event, there is the exception to *caveat emptor* which prevents the requirement to investigate so carefully from applying in this case. In the recent case of *Boykin v. Hermitage Realty*, 234 Va. 26 (1987), inducing misrepresentations of fact concerning a condominium project were made to purchasers of units in the project. Defendant invoked *caveat emptor* as a defense. The Court dismissed that claim quoting *Nationwide Ins. Co. v. Patterson*, 229 Va. 627, 631 (1985): "[O]ne cannot, by fraud and deceit, induce another to enter into a contract to his disadvantage, then escape liability by saying that the party to whom

the misrepresentation was made was negligent in failing to learn the truth," and quotes *Watson v. Avon Street Center*, 226 Va. 614 (1984), that *caveat emptor* "affords no protection to a seller who makes false representations of a material fact, constituting an inducement to the contract, on which the buyer had a right to rely," and further cites *Robberect v. Maitland Bros.*, 220 Va. 109 (1979); *Wilson v. Carpenter*, 91 Va. 183 (1895); and *Brown v. Rice's Adm'r.*, 67 Va. (26 Gratt.) 467 (1875).

There are a multitude of cases holding that fraud whether in law for damages or in chancery for rescission must be proven by the standard of clear and convincing evidence. 8B Michie Jur., *Fraud and Deceit*, § 55 fn. 3. The required standard of proof for fraud has been met in this case. Because Frye claims punitive damages, it is necessary to determine whether the fraud shown was actual or constructive. This is so because proof of actual malice is required to support a recovery for punitive damages in an action based on fraud. *Jordan v. Sauve*, 219 Va. 448 (1978). The same degree or standard of proof is required in constructive fraud as in fraud generally. *Wellons v. Werston*, 229 Va. 72 (1985). There is insufficient evidence to find Scheidemantle guilty of actual fraud. She may have had actual knowledge of the lack of a septic system when she made the false representation. She may have been perfectly innocent in making the representation, possibly having been misled in the same way by her grantor. The evidence leaves this matter entirely speculative. Consequently, no punitive damages can be recovered.

Rescission as prayed for by Frye will be granted, the matter being complicated by the existence of his bond on which presumably payments have been made, secured by deed of trust on the property. If the parties can be put in *statu quo ante*, that would require reconveyance of the property by Frye to Scheidemantle, refund to him by Scheidemantle of the down payments and any payments with interest on the deed of trust bond and cancellation by Scheidemantle of the deed of trust and bond it secures. The claims of Frye for expenditures after his purchase to determine whether there was a septic system, fee to the health department for examining soil for suitability for septic system and his attorney fees in prosecuting this cause are all denied. Counsel may argue at some

convenient motion day his claim for real estate taxes paid and for closing costs.