**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1820**

In Re:  BNX SYSTEMS CORPORATION,

Debtor.

----------------------------------

BNX SYSTEMS CORPORATION,

Plaintiff – Appellee,

v.

WORLDWIDE INVESTIGATIONS AND RESEARCH, INCORPORATED,

Defendant – Appellant,

and

JOHN NARDOLILLI,

Defendant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.   (1:07-cv-00494-CMH;  BK-05-15902-RGM;  AP-06-01141-RGM)

Argued: December 3, 2008          Decided: February 3, 2009

Before WILKINSON, DUNCAN, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Steven Ellison, BROAD & CASSEL, West Palm Beach, Florida, for Appellant.   Kevin M. O'Donnell, HENRY, O'DONNELL, DAHNKE & WALTHER, P.C., Fairfax, Virginia, for Appellee.   **ON BRIEF:** Stephen C. Piepgrass, TROUTMAN & SANDERS, L.L.P., Richmond, Virginia, for Appellant.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The issue in this case is whether parol evidence may be offered to prove a term not expressly stated in an integrated contract. The bankruptcy court and district court declined to admit the evidence. We affirm.

I.

The parties in this case, BNX Systems Corporation ("BNX") and Worldwide Investigations and Research, Inc. ("Worldwide"), jointly submitted two proposals to provide computer based authentication services to Citibank. While Citibank considered their proposals, Worldwide and BNX engaged in lengthy negotiations over how to distribute the possible Citibank revenues amongst themselves. During these discussions, on March 22, 2002, they signed a written Memorandum of Understanding ("MOU") which provided an intended distribution of estimated software, services, training, and maintenance revenues.

Months later, on December 10, 2002, Citibank accepted one of their proposed projects and agreed to purchase software licenses and services from BNX and Worldwide in the "Agreement for Citipass." Soon thereafter, on December 26, 2002, BNX and Worldwide executed the contract at issue in this case: the

Disbursal of Proceeds Agreement ("DPA").[*] The DPA provided a detailed "Split Schedule" allocating the estimated revenues from the Citipass project, and it expressly superseded BNX's and Worldwide's prior negotiations.

BNX and Worldwide each provided services to Citibank pursuant to the Agreement for Citipass. They split the Citipass revenues in accordance with the DPA: each party received its percentage of software revenues and was paid for the professional services that it individually provided to Citibank. BNX, however, did not become profitable. On December 8, 2005, BNX filed for protection under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Eastern District of Virginia.

During the course of the bankruptcy proceedings, Worldwide filed various proofs of claim against BNX. At issue in this appeal is proof of claim #17 where Worldwide claimed it was owed $1,625,294.29 pursuant to an agreement between the parties that Worldwide would receive 15% of all fees for professional services rendered by BNX as a commission (or override) for Worldwide's role in securing the deal -- a sort of finder's fee. Worldwide admitted that the 15% override was not expressly

_____

[*] The DPA states that it "is made as of this 13th day of December, 2002," but Worldwide's CEO testified, and BNX agrees, that it was not signed until December 26, 2002.

4

stated in the DPA, but sought to prove that the parties had agreed to the override by presenting the following extrinsic evidence: statements made by BNX officials, various email exchanges between the parties, and the MOU which provided that Worldwide's professional services fees would equal 15% of BNX's fees.

The bankruptcy court ruled that this extrinsic evidence was inadmissible under the parol evidence rule because the terms of the DPA were clear, they did not include a 15% override for Worldwide, and the DPA was an integrated agreement. The court therefore granted summary judgment to BNX on claim #17. Worldwide appealed to the U.S. District Court for the Eastern District of Virginia which affirmed "on the sound reasoning" of the bankruptcy court. JA 628. Worldwide appeals the district court's decision, and we review the grant of summary judgment de novo. See In re French, 499 F.3d 345, 351 (4th Cir. 2007).

II.

Virginia law governs the DPA by express provision in the agreement. The Virginia Supreme Court has emphasized that the parol evidence rule "has nowhere been more strictly adhered to in its integrity than in Virginia." Jim Carpenter Co. v. Potts, 495 S.E.2d 828, 832 (Va. 1998) (quoting Pulaski Nat'l Bank v.

<u>Harrell</u>, 123 S.E.2d 382, 387 (Va. 1962)). In explaining the parol evidence rule the court stated:

> In Virginia, no general rule seems to be better settled than that, in controversies between two parties to a contract, parol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional, written instrument.

<u>Godwin v. Kerns</u>, 17 S.E.2d 410, 412 (Va. 1941); <u>see also</u> <u>Va. Elec. and Power Co. v. N. Va. Reg'l Park Auth.</u>, 618 S.E.2d 323, 326-27 (Va. 2005) (quoting <u>Godwin</u>).

This rule prohibits exactly what Worldwide attempts to do here. Worldwide seeks to admit evidence of negotiations that took place prior to the execution of the DPA to prove that it is entitled to 15% of BNX's professional services fees as an override. This evidence is inadmissible.

By its own terms, the DPA is a complete and integrated written agreement: it "contains the entire agreement among the Parties relating to the subject matter herein" and supersedes prior negotiations "including without limitation the MOU." The alleged 15% override is nowhere to be found in the DPA. As BNX's counsel put it, "[the DPA] does not make that specific statement," and "the document does not say on its face this particular language." Supplemental JA 24.

In fact, the alleged 15% override directly contradicts the unambiguous terms of the DPA. With respect to the allocation of

6

professional services fees, the DPA provides that each party will receive a "professional services prepayment" due when the agreement is executed and states:

> Each Party will then have their professional services hours approved by Citibank. [BNX] will be the billing party and each Party will be compensated for approved hours at the actual amount billed, less a credit for their prepayment amount above, as follows: [lists daily rates for various professional services]

Worldwide's claimed 15% override contradicts the clear statement that "each party will be compensated for approved hours at the actual amount billed."

Worldwide argues that this allocation of professional services fees is ambiguous and therefore the evidence is admissible to explain its meaning. See, e.g., Prospect Dev. Co. v. Bershader, 515 S.E.2d 291, 296 (Va. 1999) (an integration clause does not bar parol evidence to explain ambiguities in a contract). This is simply an attempt to create ambiguity where none exists. The attempt fails because the provision has a plain meaning and "[p]arol evidence cannot be used to first create an ambiguity and then remove it." Cohan v. Thurston, 292 S.E.2d 45, 46 (Va. 1982). Moreover, Worldwide's claim that this contract term is ambiguous is belied by the fact that Worldwide itself performed in accordance with the plain meaning of the contract, rather than the meaning it now asserts. Worldwide claims the MOU represents the true agreement between the

7

parties, but Worldwide did not share its professional services fees with BNX as it would have been required to do under the distribution percentages embodied in the MOU. The proffered evidence is therefore inadmissible to prove the claimed 15% override because it contradicts the unambiguous terms of the DPA.

Worldwide argues that the evidence is admissible to explain various other ambiguities that it identifies in the DPA. These arguments fail because even when a contract is ambiguous, parol evidence is not admissible to "contradict or vary the terms" of the written contract. Prospect Dev. Co., 515 S.E.2d at 296. To cover its bases, Worldwide also argues that the evidence is admissible under all of the other exceptions to the parol evidence rule listed in Shevel's, Inc. v. Southeastern Associates, Inc., 320 S.E.2d 339, 343 (Va. 1984). These claims also fail. First, even if the exceptions for partially integrated agreements or independent collateral agreements applied, the evidence would not be admissible because these exceptions do not allow parol evidence that is "inconsistent with the written contract" or that would "contradict or vary" the terms of the contract. Id. Second, the evidence is not admissible under the exceptions for fraud or mistake because there is not sufficient evidence to support a finding of fraud

8

or mistake.  Moreover, Worldwide did not raise the issue of fraud in its original proof of claim.

For these reasons, the judgment of the district court is

AFFIRMED.