BREDAR, District Judge,
concurring in part and dissenting in part:
I respectfully dissent in part and concur in part with the majority’s disposition of this case.
Although both of the parties in the court below argued the language at issue in the 2004 and 2005 Flow Plans was unambiguous, the district court, I believe, incorrectly found as a matter of law that a patent ambiguity existed such that it altered the fundamental balance of power between the parties. The district court focused on three words in the Flow Plans, specifically, “SunTrust Mortgage guidelines,” and did not give any weight to the equally important modifying language, “that are currently being used and have been mutually agreed upon.” The majority’s opinion follows a similar direction. But, as I see it, this modifying language holds the key to proper interpretation of the contract between SunTrust Mortgage and United Guaranty and cannot be disregarded. As the Virginia Supreme Court has said, “no word or clause in a contract will be treated as meaningless if a reasonable meaning can be given to it, and parties are presumed not to have included needless words in the contract.” TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C., 263 Va. 116, 557 S.E.2d 199, 200 (2002).
The language in question is clear and unambiguous. It means what it says, that is, “SunTrust Mortgage guidelines that are currently being used and have been mutually agreed upon.” It is only after the rubber meets the road that we learn the parties believe this language applies to different documents, or different sets of documents. Thus, this is a classic example of a latent ambiguity, defined by Virginia courts as a term of an agreement or instrument “ “which, upon application to external objects, is found to fit two or more of them equally.’” Zehler v. E. L. Bruce Co., 208 Va. 796, 160 S.E.2d 786, 789 n. 5 (1968) (citing 9 Wigmore, Evidence § 2472, at 233 (3d ed.1940)). “A latent ambiguity exists where language “while appearing perfectly clear at the time the contract[ ] [is] formed, because of subsequently discovered or developed facts, may reasonably be interpreted in either of two ways.’” Virginia Elec. & Power Co. v. Norfolk S. Ry. Co., 278 Va. 444, 683 S.E.2d 517, 526 (2009) (quoting Galloway Corp. v. S.B. Ballard Constr. Co., 250 Va. 493, 464 S.E.2d 349, 354 (1995)).
The contested phrase clearly implies a factual predicate, and the predicate set forth in the Master Policy was that underwriting guidelines would originate with United Guaranty. But the district court relied upon a disputed factual allegation by SunTrust Mortgage — that SunTrust Mortgage had devised its own underwriting guidelines and that United Guaranty had agreed to them — to decide that the parties used this language to permit substitution of SunTrust Mortgage’s guidelines for *257 United Guaranty’s guidelines. Whether United Guaranty had agreed to SunTrust Mortgage’s underwriting guidelines was hotly disputed by United Guaranty.
Procedurally, it was incorrect for the district court to rely upon SunTrust Mortgage’s extrinsic evidence to resolve this matter upon summary judgment. This was pled as a jury case, and extrinsic evidence as to the meaning of the language in question should only have been considered by the jury to determine which guidelines fit the phrase. Virginia courts for more than two centuries have recognized the propriety of receiving extrinsic evidence to resolve a latent ambiguity. Gatewood v. Burns, 7 Va. (3 Call.) 194, 1802 WL 650, at *8 (Va.1802). And resolution of a latent ambiguity by resort to extrinsic evidence is a question of fact for the jury, not for the court. Ewell v. Brock, 120 Va. 475, 91 S.E. 761, 762 (1917). Alternatively, the Flow Plans reference a collateral agreement, which is clearly a proper subject for admission of extrinsic evidence— again, to be considered by the jury. See J.E. Robert Co. v. J. Robert Co., Inc., of Virginia, 231 Va. 338, 343 S.E.2d 350, 353 (1986). United Guaranty was entitled to submit extrinsic evidence to the jury and have it determine which document or set of documents fit the language in the Flow Plans.
This Court has previously made it clear that the intention of contracting parties is a question of fact that cannot be resolved on summary judgment and that, “[i]f there is more than one permissible inference as to intent to be drawn from the language employed, the question of the parties’ actual intention is a triable issue of fact.” Bear Brand Hosiery Co. v. Tights, Inc., 605 F.2d 723, 726 (4th Cir.1979), cited in Gen. Acc. Fire & Life. Assur. Corp., Ltd. v. Akzona, Inc., 622 F.2d 90, 93 (4th Cir.1980). See also Cram v. Sun Ins. Office, Ltd., 375 F.2d 670, 674 (4th Cir.1967) (“the intent of the parties to an ambiguous contract is a question of fact which cannot properly be resolved on motions for summary judgment”); Am. Fid. & Cas. Co. v. London & Edinburgh Ins. Co., 354 F.2d 214, 216 (4th Cir.1965) (“Not merely must the historic facts be free of controversy [in summary judgment proceeding] but also there must be no controversy as to the inferences to be drawn from them.”). Because a genuine dispute of material fact existed on SunTrust Mortgage’s main claim against United Guaranty, I would rule that summary judgment for SunTrust Mortgage was improper.*
I would also reverse the evidentiary ruling, barring the admission of United Guaranty’s Guideline Matrix and SunTrust Mortgage’s altered email messages on the issue of which party’s underwriting guidelines governed. The Guideline Matrix should have been submitted to the trier of fact as extrinsic evidence pertaining to the underwriting guidelines. And the email messages were highly relevant evidence that displayed guilty knowledge by Sun-Trust Mortgage’s key employee that Sun-Trust Mortgage’s position was contradict *258 ed by the course of dealing between the parties. See, e.g., J.A. 696 (notes from SunTrust Mortgage affirming Mary Pet-titt’s agreement to United Guaranty’s terms bound SunTrust Mortgage). This evidence bore directly on the question of how to resolve the latent ambiguity in the contract. Excluding this evidence unfairly tied United Guaranty’s hands in defending itself in this lawsuit.
Because I believe summary judgment was improperly granted to SunTrust Mortgage on its claim against United Guaranty, I would also hold that summary judgment was improperly granted to SunTrust Mortgage on United Guaranty’s counterclaim for the simple reason that the record is yet incomplete as to whether United Guaranty breached its contract of insurance with SunTrust Mortgage; thus, it is premature to consider whether SunTrust Mortgage properly and timely raised the affirmative defense of first material breach. I would not, however, disagree with the majority’s reasoning as to the failure of SunTrust Mortgage’s affirmative defense were the counterclaim properly before the Court on its merits. And I would further conclude that it would be unconscionable to require United Guaranty to continue to provide insurance coverage on loans for which Sun-Trust Mortgage is excused from paying renewal premiums.
Finally, I would affirm the ruling of the district court on its sanctions ruling as being within the scope of discretion afforded to district courts on such matters.
In summary, I respectfully dissent from the majority’s affirmance of summary judgment on SunTrust Mortgage’s claim against United Guaranty, concur with the reversal of summary judgment against United Guaranty on its counterclaim, dissent from the majority’s affirmance of the granted motion in limine, and concur with the majority’s affirmance of the ruling on sanctions.

 SunTrust Mortgage has relied in its brief on case law from Virginia that sets forth a presumption of choosing an insured's interpretation over an insurer’s interpretation of disputed contractual language. (Appellee’s Br. 31.) Such a presumption should logically be employed only if, after employing the traditional tools of contract construction, one is still left with two or more reasonable interpretations. To rely upon the presumption in the first instance, without proper consideration of extrinsic evidence, as this case shows, results in a failure to ascertain the intentions of the contracting parties, and the Virginia Supreme Court has indicated that determining the parties’ intent is the whole point of interpreting contracts, including insurance contracts, Virginia Farm Bureau Mut. Ins. Co. v. Williams, 278 Va. 75, 677 S.E.2d 299, 302 (2009).