## Richmond

### Board of Supervisors of Fairfax County

### v.

### The Southland Corporation

December 3, 1982.

Record No. 801127.

Present: All the Justices.

*David T. Stitt, County Attorney (George A. Symanski, Jr., Assistant County Attorney; Karen J. Harwood, Assistant County Attorney*, on briefs), for appellant.

*Wyatt B. Durrette, Jr. (Michael R. Vanderpool; Michael C. Montavon; Maloney & Chess*, on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

In this zoning case, we must decide whether a local zoning ordinance may constitutionally distinguish "quick-service food stores" from other grocery stores and similar retail uses. The Southland Corporation brought a motion for declaratory judgment against the Board of Supervisors of Fairfax County, seeking an adjudication that certain parts of the Fairfax County Zoning Ordinance were unconstitutional and void as applied to it. The trial court, after hearing the evidence *ore tenus*, in a written opinion found for Southland. It held that the ordinance, as applied to Southland, violates the due process and equal protection provisions of the Virginia and United States Constitutions, as well as Code § 15.1-488, which requires the uniform application of zoning laws within zoning districts.

Southland operates a nationwide chain of retail food and convenience stores known as "7-Eleven." These are typically located in free-standing buildings containing less than 5000 square feet, on small parcels of land fronting on heavily travelled roads, and feature drive-in parking immediately in front of the entrance. The majority of the stores contain 2500 square feet of net floor area.

The Fairfax County Zoning Ordinance, art. 20, § 20-300 classifies "any building which contains less than 5000 square feet of net floor area and which is used for the retail sale of food and other items" as a "quick-service food store." Quick-service food stores are permitted in free standing buildings as a matter of right in three zoning districts: planned development housing (PDH), planned development commercial (PDC), and planned residential community (PRC), but these in turn require a development plan individually approved by the Board of Supervisors. Such stores are also permitted as a matter of right in certain shopping centers (in C-6, C-7, and C-8 districts), but only if they are located under the roof of a shopping center which contains at least six other stores and meets certain highway access criteria. They are permitted in free-standing buildings in C-5, C-6, C-7, C-8, I-5, and I-6 commercial and industrial districts, but only if they obtain a special exception from the Board. They share this special exception requirement with twenty-two other uses classified as "Commercial and Industrial Uses of Special Impact." *Id.* art. 9, § 9-500, 501. These are defined as uses "which by their nature or design can have an undue impact upon or be incompatible with other uses of land within a given zoning district." *Id.* art. 9, § 9-001. The Board reserves the right to deny any application for a special exception for one of these uses if it deems such use to be incompatible with existing or planned development in the district. The Board may also impose such "conditions and restrictions" as it thinks proper to insure that such a use will be homogeneous with the neighborhood. *Id.*

Southland points out that the effect of these provisions is to deny it the *right* to construct or operate a free-standing quick-service food store in any commercial district in Fairfax County. It contends that the special exception process to which it is thus subjected costs about $4,000.00 in application fees, attorneys fees, engineering and other costs for each site, increases construction costs substantially, and delays each store's opening for nine to twelve

months. As Southland says, many other commercial uses, permitted by right, are exempt from the special exception process. Among these are grocery stores over 5000 square feet in floor area, restaurants, retail stores, shopping centers, banks, theaters, churches, hotels, motels, and schools. Southland argued, and the trial court found, that quick-service food stores of the "7-Eleven" type would have less adverse impact upon neighboring properties, the environment, and traffic than would some uses permitted by right, and that the ordinance was therefore an unreasonable classification as applied to Southland.

The County's appeal raises a preliminary issue of jurisdiction. Southland made no contention that the ordinance was facially invalid, and the trial court found that it was valid on its face. The County points out that Southland, being thus limited to a contention that the ordinance was invalid as applied, failed to show that the ordinance had ever been applied to Southland. It is true that Southland neither alleged nor proved that it had ever applied for or been denied a special exception to build a free-standing quick-service food store under the ordinance. Thus, argues the County, Southland was merely requesting an advisory opinion of the court, and failed to show that there was an "actual antagonistic assertion and denial of right," so as to confer declaratory judgment jurisdiction upon the court pursuant to Code § 8.01-184.[1]

The County relies on *City of Fairfax* v. *Shanklin*, 205 Va. 227, 135 S.E.2d 773 (1964). There, a plaintiff contended that he was a taxpayer of the city, and that he considered the city's zoning ordinance to exceed the statutory grant of power in that it purported to confer on the Board of Zoning Appeals the authority to grant special use permits for the construction of apartments. We held that Shanklin had failed to invoke the court's jurisdiction to render declaratory judgments by showing that he was engaged in an actual controversy with the city. He had no specific adverse

---

[1] This objection was made by counsel for the County orally, at the beginning of trial, for the first time. Both parties treated it as an "oral demurrer." The trial court overruled it upon the ground that demurrers are required by Code § 8.01-273 to be filed in writing. A further defect was its lack of timeliness. A litigant who has answered a pleading may not thereafter demur thereto, unless leave of court, after proper notice, is first given to withdraw the answer. *O'Neill* v. *Cole*, 194 Va. 50, 72 S.E.2d 382 (1952). We discuss the objection, however, because it purports to raise a question of the court's jurisdiction over the subject matter, which may be raised at any stage of the proceedings. *Lucas* v. *Biller*, 204 Va. 309, 130 S.E.2d 582 (1963).

claim, based upon existing facts. No application had ever been made to construct apartments under the ordinance, and Shanklin could not show that he would be aggrieved by the Board's decision if such an application were ever to be made in the future. His complaint was purely hypothetical and abstract. His claim was simply a difference of opinion between a taxpayer and the governing body. We quoted 26 C.J.S. *Declaratory Judgments* § 26, p. 99: "A controversy is not created by taking a position and then challenging the government to dispute it." *Shanklin* at 231, 135 S.E.2d at 777.

The case at bar differs from *Shanklin* in two respects. First, Southland is actually engaged in the business of obtaining suitable sites in Fairfax County and developing them as "7-Eleven" stores. This is a major component of its business operations. It contends that it is injured in conducting these operations simply by being compelled to go through the special exception *process*. The process, it says, is a burden directly imposed upon it by the County, but not imposed upon others similarly situated. Southland claims to suffer an immediate and direct pecuniary disadvantage as a result of the mere existence of the special exception requirement. Its position *vis-a-vis* the County constitutes an actual controversy, whereas Shanklin's hypothetical and abstract disapproval of the city's zoning ordinance did not. Second, the County essentially admitted Southland's position in its pleadings. The County's answer states: "Defendant admits that Complainant has attempted and may be attempting to construct and operate quick-service food stores in Fairfax County. . . ." In subsequent parts of its answer, the County admits that "quick-service food stores" are so defined by its zoning ordinance as to bring them within the special exception requirement. Southland asserts that it has the actual, present right to construct and operate quick-service food stores in commerical districts in Fairfax County, without submitting to the special exception requirements, because the zoning ordinance is unconstitutional and void as applied. The County denies this assertion. Having conceded that Southland was directly and immediately affected by the ordinance, the County will not now be heard to contend that no actual controversy exists between the parties.

Further, Southland had, for the reasons stated above, a "justiciable interest" in the subject matter which was ripe for judicial determination, rather than one which was merely "hypothetical or

abstract." This gave it standing to invoke the court's declaratory judgment jurisdiction. *Henrico County* v. *F. & W. Inc.,* 222 Va. 218, 278 S.E.2d 859 (1981).

An "actual controversy," amounting to an "actual antagonistic assertion and denial of right," "involving the interpretation of . . . . municipal ordinances," is one of the classes of cases expressly made the subject of declaratory judgment jurisdiction by Code § 8.01-184. The declaratory judgment statutes are remedial. Their purpose is "to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor." Code § 8.01-191. They are to be "liberally interpreted and administered with a view to making the courts more serviceable to the people." *Id.* We hold that the court had subject matter jurisdiction.

We now turn to the merits. The power to regulate the use of land by zoning laws is a legislative power, residing in the state, which must be exercised in accordance with constitutional principles. This power may be delegated to the political subdivisions of the state. *Civic Assoc.* v. *Chesterfield County,* 215 Va. 399, 209 S.E.2d 925 (1974). Code § 15.1-486 authorizes the governing bodies of Virginia counties to adopt local zoning ordinances. Section 15.1-491(c) authorizes such governing bodies to reserve unto themselves the right to issue "special exceptions under suitable regulations and safeguards."

The terms "special exception" and "special use permit" are interchangeable. *Anastasi* v. *Zoning Commission,* 163 Conn. 187, 302 A.2d 258 (1972); *Burroughs* v. *Board of County Commrs.,* 88 N. M. 303, 540 P.2d 233 (1975). Both terms refer to the delegated power of the state to set aside certain categories of uses which are to be permitted only after being submitted to governmental scrutiny in each case, in order to insure compliance with standards designed to protect neighboring properties and the public. *See generally* 3 R. Anderson, American Law of Zoning 2d § 19.01 (2d ed. 1977); 1 Rathkopf, The Law of Zoning and Planning § 12.06 (4th ed. 1982); 82 Am. Jur. 2d, *Zoning and Planning* § 281 (1976). The legislature may require certain uses, which it considers to have a potentially greater impact upon neighboring properties or the public than those uses permitted in the district as a matter of right, to undergo the special exception

process. Each site is to be examined by public officials, guided by standards set forth in the ordinance, for the impact the use will have if carried out on that site. Although the uses in such special exception categories are permissible under the ordinance,[2] such permission is to be granted subject to such limitations and conditions as public officials may impose in order to reduce the impact of the use upon neighboring properties and the public to the level which would be caused by those uses permitted as a matter of right. *See Bell* v. *City Council*, 224 Va. 490, 297 S.E.2d 810, decided today. *See also* 3 Anderson, *supra*, § 18.01; 1 Rathkopf, *supra*, § 12.06.

Whether a legislative body has reserved unto itself the power to grant or deny special exceptions or use permits, or has delegated the power to a Board of Zoning Appeals, we have consistently held the exercise of that power to be a legislative, rather than an administrative act.[3] *Bollinger* v. *Roanoke County*, 217 Va. 185, 227 S.E.2d 682 (1976); *Byrum* v. *Orange County*, 217 Va. 37, 225 S.E.2d 369 (1976); *City of Richmond* v. *Randall*, 215 Va. 506, 211 S.E.2d 56 (1975); *Civic Assoc.* v. *Chesterfield County, supra. A fortiori*, the decision of the legislative body, when framing its zoning ordinance, to place certain uses in the special exception or conditional use category, is a legislative action. It involves the same balancing of the consequences of private conduct against the interests of public welfare, health, and safety as any other legislative decision.

The parameters of the judicial review of legislative zoning decisions are well settled. The action of the local governing body in enacting or amending its zoning ordinance is presumed to be valid. Inherent in the presumption of legislative validity is a presumption that the classification that the ordinance contains, and the distinctions which it draws, are not arbitrary, not capricious, but reasonable. Where such presumptive reasonableness is challenged by probative evidence of unreasonableness, the ordi-

---

[2] This distinguishes the special exception from the variance. The latter authorizes a use which would otherwise be prohibited by the ordinance. Zoning ordinances usually delegate to public officials the power to grant variances where literal enforcement would result in unnecessary hardship. Code § 15.1-495(b). 3 R. Anderson, *supra* § 18.03, § 19.02. Public officials, passing upon requests for variances, act in an administrative, rather than a legislative, capacity. *See Packer* v. *Hornsby*, 221 Va. 117, 267 S.E.2d 140 (1980). *See also Hendrix* v. *Board of Zoning Appeals*, 222 Va. 57, 278 S.E.2d 814 (1981).

[3] This appears to be a minority view. 3 Anderson, *supra*, § 19.10 at 380-81.

nance cannot be sustained unless the governing body meets the challenge with some evidence of reasonableness. But the governing body is not required to go forward with evidence sufficient to persuade the fact-finder of reasonableness by a preponderance of the evidence. The burden is less stringent. If evidence of reasonableness is sufficient to make the question "fairly debatable," the ordinance must be sustained. *Fairfax County* v. *Snell Corp.*, 214 Va. 655, 202 S.E.2d 889 (1974); *Board of Supervisors* v. *Carper*, 200 Va. 653, 107 S.E.2d 390 (1959).

 Applying the foregoing principles to the evidence before us, we conclude that the County was entitled to a presumption of legislative validity, which Southland challenged by probative evidence tending to show unreasonableness. Although the evidence touched upon such problems as glare from night lighting and run-off from storm drainage, the principal dispute was the relative amount of highway traffic congestion caused by quick-service food stores, compared to that caused by the uses permitted by right. It is unnecessary to review the evidence in detail, except to observe that it was sufficient to overcome the County's initial presumption of legislative validity. It is self-evident, for example, that large shopping centers and supermarkets generate more total traffic than 2500 square foot convenience stores.

The County, however, responds with evidence of two countervailing considerations. First, actual traffic counts showed that the peak hours of vehicle activity entering and leaving quick-service food stores tended to coincide with the peak hours for traffic on the adjacent roads, particularly the morning rush hour. The peak hours in the larger commercial uses permitted by right tended to occur in mid-morning, or at other times when the roads were less congested. Second, the intensity of traffic activity in relation to land area was far greater in the case of small convenience markets. They were found to generate 506 "trips" per 1000 square feet, while neighborhood shopping centers generated only 65 such "trips." A "trip" was defined as a vehicle either entering or leaving the site between 7:00 a.m. and 7:00 p.m.

This might have little significance in itself, but it was coupled with the fact that the small convenience markets, situated on much smaller parcels of land, had little flexibility in the location of entrances and "curb cuts." If such a store were to be sited at the corner of a busy intersection, for example, it would precipitate a substantial amount of traffic directly into the most congested

part of the traffic pattern, at the most congested hours. While entrances and "curb cuts" may be reasonably regulated in the exercise of the police power, access may not be entirely denied, absent a "taking" for public use and the resulting constitutional necessity for the payment of just compensation. *See State Highway Comm'r. v. Linsly*, 223 Va. 437, 290 S.E.2d 834 (1982).

Larger shopping centers and supermarkets, by contrast, being located on larger tracts of land, may be subjected to far more traffic control before the point of confiscatory regulation is reached. Their greater size permits more flexibility in providing service roads, deceleration lanes, and other means of access control. Even if they are to be provided only with simple entrances, these may more readily be kept away from congested intersections and other danger points by reason of the greater land area involved.

We shall not undertake to resolve the controversy posed by the foregoing arguments because they demonstrate that the question whether quick-service food stores should be required to obtain a special exeption is "fairly debatable." "Given the human tendency to debate any question, an issue may be said to be *fairly* debatable when the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions." *Fairfax County v. Williams*, 216 Va. 49, 58, 216 S.E.2d 33, 40 (1975). Thus the County has presented evidence sufficient to render the reasonableness of the ordinance "fairly debatable," and it must therefore be sustained.

For these reasons, the decree appealed from will be reversed and a final decree entered here, denying the prayer of the motion for declaratory judgment.

*Reversed and final decree.*