## CIRCUIT COURT OF FAIRFAX COUNTY

Bobby L. Mason et al.

    v.

Fairfax County

November 10, 1993

Case No. (Chancery) 131318

BY JUDGE THOMAS A. FORTKORT

Windsor Estates is a subdivision of medium priced homes in Fairfax County. Four of the homeowners in the subdivision have sizable backyards that drop precipitously to a stream bed that normally carries about four inches of flow over a six to eight foot width.

In August of 1988, Wills and Van Metre, a local contractor was looking for areas to place fill material from a project they were developing. The landowners were very receptive to the Wills and Van Metre plan to dump clean fill in their backyards which would increase the use and aesthetic value of their property.

Van Metre brought 600 tandem truckloads to the four lots and proceeded to dump them. Such activities do not go unnoticed in Fairfax County. Before long a local resident complained to Supervisor Alexander's office about some suspected illegal dumping. Mr. Alexander advised the county staff of the complaint and county inspectors were dispatched to the site. The dumping was stopped and the homeowners were issued violation letters because no county permits were obtained prior to the dumping activity.

The residents of the four lots complained that they were innocent pawns in the whole episode. The County began to press Wills and Van Metre for the data necessary to obtain the dumping permits.

The County Code 2–601 permits adding soil as long as the depth added does not exceed eighteen inches and the area filled does not exceed 5000 square feet. The fill added to each of these lots exceeded these limitations. Van Metre would have to submit a rough grading plan and other documents to receive approval for the county work permits.

The process moved very slowly and sometime during this process, the County determined that a Special Exemption was needed because the fill was dumped in a flood plain. The Special Exemption required additional studies and public hearings. As the process ground on, Van Metre's fortunes took a turn for the worse and the company declared bankruptcy. This development left the County dealing with the home-owners whose property has remained untouched since the County stopped the dumping. Several meeting were held in which the County staff remained adamant that the rules of a special exemption must be strictly followed. The homeowners appealed to Supervisor Alexander to break the impasse.

On September 16, 1991, Supervisor Alexander made a motion before the Board of Supervisors to grant a special exception to the home-owners. The Motion passed unanimously.

The County Attorney contends that this Board action was merely a waiver of the special exception filing fees and acceptance of the application for a special exception.

The Plaintiff homeowners filed a suit for declaratory judgment on the grounds that no special exception was required and if one was required, it was granted by the Board action of September 16, 1991. The first of these arguments is discussed below.

### No Special Exception Required

The Plaintiffs assert that the County has not proven that any fill was dumped in flood plain. The original notices of violation did not allege any flood plain violation, just excessive fill. The presence or non-presence of flood plain is crucial to the question of whether a special exception was necessary. If the fill is not on flood plain, no special exception would be necessary.

The suggestion that the fill was dumped on flood plain developed sometime during the County-Van Metre negotiations. As a result of County demands, Van Metre produced through an engineering company, a report which showed the fill would have no more effect on the flow of water during flood times than would have been produced by the land in the pre-fill condition. This report known as the Cook and Miller Report was the subject of much testimony during trial.

Mr. John T. White, the County engineer who reviewed the Cook and Miller Report and approved the same, testified that he could determine the fill was on flood plain by extrapolating data from the report.

The report itself does not attempt to determine the extent of the pre-fill flood plain. Even assuming that Mr. White's computations are scientifically valid, his eve of trial conclusion that the fill was placed on flood plain is the only proof offered by the County that a special exception was necessary. The Plaintiffs' expert testified that the Cook and Miller report did not consider the effects of impoundments caused by various construction culverts which slowed the flow of water past the subject properties. In the intervening years, the Fairfax County Parkway was built across the water shed and some preliminary work has been done on the Metro station which will be built upon adjoining property. The effect of all of these post-fill changes may make it impossible to determine the pre-fill flood plain.

The legal issue in this case is whether the County staff's designation of a portion of the subject properties as flood plain hence subject to the rules governing a special exception was arbitrary and capricious. The burden is on the Plaintiffs to prove the County acted arbitrarily in its designation.

The County may have acted entirely on suspicion when it required Van Metre to file the Cook and Miller report. Once that report was filed the County had reasonable grounds to conclude that fill was in the flood plain in prohibited amounts. In this process, the County is not held to what it may have known when the violation was first noticed. Rather it is the burden on the Plaintiffs to prove that the "flood plain" decision as it exists today is arbitrary and capricious.

In simple legal terms the Plaintiffs' burden of proof is to show by a preponderance of the evidence that the County's decision that the land occupied by the fill encroached upon flood plain was arbitrary and capricious. Deemed a legislative rather than an administrative action, a zoning decision is entitled to a presumption of legislative validity.

*Fairfax County Board of Supervisors v. Southland Corp.*, 224 Va. 514 (1982). "Inherent in the presumption of legislative validity is a presumption that the classification that the ordinance contains, and the distinctions which it draws, are not arbitrary, not capricious, but reasonable." *Southland*, 224 Va. at 519. Indeed, the action must be sustained "absent clear proof that the action . . . bears no reasonable relation to the public health, safety, morals, or general welfare." *City Council of the City of Virginia Beach v. Harrell*, 236 Va. 99 (1988).

Only when a landowner has first satisfied this threshold burden of proof will the reviewing court require a showing of reasonableness by the governing body. Even then the governing body must produce only that quantity of evidence sufficient to make the issue of reasonableness "fairly debatable." *Ames v. Town of Painter*, 239 Va. 343 (1990); *County Board of Arlington v. Bratic*, 237 Va. 221 (1989). In the instant case, plaintiffs have offered no evidence to rebut the presumption of reasonableness to which the County is entitled.

If the Plaintiffs offered proof that the flood plain did not receive enough fill to require it to receive a special exception, the Court would have to determine whether the basis for the expert's opinion was supported by the underlying facts. The case then would evolve on the resolution of a dispute between expert witnesses. The Court should be able to conclude there is encroachment on flood plain or there is not.

The Plaintiffs' have only offered proof that the study on which the County relied was flawed. Since there is no proof offered that there is no flood plain, the Court cannot conclude that the County is acting "arbitrarily" even if the data upon which it relies is flawed. The most favorable view of the Plaintiffs' case is that the County may have been mistaken. While the County's evidence may be in dispute, it is incumbent upon the Plaintiffs to assert evidence sufficient to show that the fill dirt was not in flood plain to the extent that it violated county ordinances. Lacking this evidence, if the Court were to rule in favor of the Plaintiffs, it would be shifting the burden of proof from the Plaintiffs to the Defendant.

The Court therefore concludes that the County's requirement that the Plaintiffs obtain a valid special exemption permit was not arbitrary or capricious under the circumstances of this case.

## Special Exemption Already Granted
## by the Board of Supervisors

Despite some evidence to the contrary, the Court finds that the Board of Supervisors did attempt to grant the plaintiff homeowners a special exception. In an effort to bring this entire problem to a close, Supervisor Joseph Alexander, with the advice of the county staff attempted to grant a special exemption on his own motion. The motion was clearly presented in that form and was duly passed by the Board whose members were totally aware of the import of the ruling they were about to pass. Later, in the fresh light of day, staff began to realize that the action taken by the Board may have been improper. Thus, they began a desperate attempt to recast the Board action as a mere waiver of the special exemption fees. This Court after a careful review of all the materials, statements by the various witnesses and weighing the evidence concludes as a matter of fact that the Board passed a special exemption.

Unfortunately, the inquiry does not stop there. The county asserts as an alternate opinion that the Board action was a nullity. In that position, the County Attorney is undoubtedly correct.

The Virginia General Assembly in Virginia Code § 15.1–496 addresses the subject of special exemptions declaring:

> no such special exceptions or variances shall be authorized except after *notice and hearing* as required by § 15.1–431 [emphasis added].

The notice provision of § 15.1–431 mandates advertising of the action by descriptive summary and location where the pertinent plans can be examined. No plan/exception may be adopted until notice has been published for two weeks in a general circulation newspaper. The hearing must take place no less than six but no greater than twenty-one days after the advertisement has run.

### County Authority

Fairfax County Zoning Ordinance, art. 9, § 9–009(5), requires that every "application [for special exception] be scheduled for public hearing." Similar to the state provisions, subsequent sections of the County code set out detailed procedures for hearing and notice via mailing, publication, and posting. Fairfax County Zoning Ordinances, art. 18, §§ 18–109, 18–110.

Virginia law supports the contention that the Board cannot waive the notice and hearing procedures in granting special exceptions. In *Town of Vinton v. Falcun Corp.*, 226 Va. 62 (1983), the Virginia Supreme Court held that the Town could not adopt an amendment to local zoning laws without first complying with statutory notice and public hearings — even as an emergency measure. The court writes, "[t]he General Assembly could have enlarged the emergency legislative powers by expressly exempting [Town of Vinton] from the procedural requirements of the zoning statutes. It did not do so and we do not attribute the omission to legislative inadvertence." *Town of Vinton*, 226 Va. at 67.

Similarly in *Hurt v. Caldwell*, 222 Va. 111 (1981), the Virginia Supreme Court held that a conditional use permit was invalid when issued by the city zoning administrator without meeting public hearing requirements in the county ordinance. A more recent case held that because the property owner did not actually apply for a special exception, "the Board had no power to grant an exception by implication, and the county government is not bound by the zoning administrator's opinion to the contrary." *Board of Supervisors v. Booher*, 232 Va. 428 (1987).

In its review of zoning law, the University of Richmond Law Review commentator called notice requirements, "mandatory conditions precedent to a local governing body's exercise of its zoning power." Woodrow W. Turner, Jr., and Mark R. Herring, "Planning, Zoning, and Subdivision Law," 25 *U. Rich. L. Rev.* 841, 842 (1991).

It is the opinion of this Court as previously expressed in a written opinion letter that the County notice provisions are mandatory and the Court adopts the position of the learned treatise cited above; that these conditions are both mandatory and a condition precedent to a local governing body's exercise of its zoning power.

The Court finds that the Board action granting these Plaintiffs a special exemption to be null and void.

The Court realizes that its decision in favor of the County leaves the entire situation where it has remained for the past five years. I deeply regret that outcome because the Plaintiffs have acted in good faith to resolve the problem. Nevertheless, the Court cannot forego its duty to insist that procedures painfully developed over time for the protection of the citizens of this county be set aside even for people worthy of every consideration. What may appear a bureaucratic haze is in effect

a limitation on the power of elected officials to work their will without the consent of the governed. That principle cannot be ignored either by the Court or the parties hereto.