# CIRCUIT COURT OF LANCASTER COUNTY

John S. Booker et al.

v.

Benjamin R. Humphreys, Jr.,
and Comtel, Inc.

Case No. CH05-32

BY JUDGE HARRY T. TALIAFERRO, III

December 12, 2005

This matter came to be heard upon the Demurrers and Motions Craving Oyer filed by the defendants.

The eighteen plaintiffs in this suit are investors and minority stockholders in defendant Comtel, Inc., a Virginia stock corporation. Defendant Benjamin R. Humphreys, Jr., is the majority shareholder and a director of Comtel. Plaintiffs filed a Bill of Complaint (BOC) for a declaratory judgment wherein they seek judicial interpretation of a Stock Purchase Agreement dated October 17, 1999 (the "Agreement" or "SPA") attached as an exhibit to the Bill and "other instruments of writing setting forth the respective rights of the parties hereto."

544

The issue before the Court is whether plaintiffs' Bill alleges sufficient facts which, if true, would establish that the Agreement, inclusive of solicitations made by the defendants, together with other instruments of writing setting forth the respective rights of the parties, provides that the board of directors of Comtel be comprised of not more or less than three persons, two of whom shall be selected by and designated as representatives of the minority shareholders.

*Demurrers*

The Demurrers of the two defendants are identical. Invoking Va. Code § 8.01-273, the defendants allege the plaintiffs' Bill of Complaint fails to state a claim upon which relief can be granted for the reasons that (1) the written document on which plaintiffs rely does not grant plaintiffs the rights they assert and (2) plaintiffs' Bill of Complaint improperly seeks an advisory opinion. Upon consideration of a demurrer, the Court accepts all facts alleged in or reasonably inferable from the plaintiffs' pleading to be true. The Court does not evaluate and decide the merits of a claim, it only tests the sufficiency of factual allegations to determine whether the plaintiffs' pleadings state a cause of action. *West Virginia Properties, Inc. v. First Va. Mtg. & Real Estate Inv. Trust*, 221 Va. 134, 267 S.E.2d 149 (1980); *Board of Supvrs. v. Southland Corp.*, 224 Va. 514, 297 S.E.2d 718 (1982).

(1) *Sufficiency of Alleged Documents to Support Plaintiffs' Claim*

Plaintiffs' allegation that its claim is based upon "other instruments of writing" (BOC ¶ 23) does not clearly inform of the true nature of plaintiffs' claim based on written documents other than the Agreement. Rule 1:4(d). Accordingly, in deciding the Demurrer motions, the Court will consider only the Agreement and the other factual allegations in plaintiffs' Bill.

Plaintiffs' Bill alleges that, in 1999, the defendants solicited plaintiffs to invest in Comtel and in doing so offered them certain "protections and inducements" including certain "management oversights and safeguards" which, among other things, included a representation that the Board of Directors of Comtel would consist of three persons only, two of whom would be selected by and designated as minority representatives of plaintiffs (the "Solicitation"). (BOC ¶¶ 8, 9, 10, & 11.) It is alleged that, in reasonable reliance upon such protections and safeguards, the plaintiffs were induced to

purchase Comtel stock and become minority shareholders. (BOC ¶¶ 11 & 14.) The only parties to the written Agreement are Comtel[1] as seller and plaintiffs as purchasers.

Defendants' argue first that the Agreement is not ambiguous because it contains no provision for the election of "minority directors" and contains no mention of the limitation of total directors to three only. Plaintiffs counter that, since § 13.C of the Agreement provides that Robert L. Braun and C. Dwight Clarke shall serve as directors "to represent the interest of the purchasers" for "so long as the purchasers (any one or more) are owners of stock in Comtel," they implicitly have the rights they claim as minority shareholders. Plaintiffs argue that the Court after considering all relevant written documents may to the extent that the Agreement is ambiguous hear parol evidence to ascertain the complete understanding between the parties. Upon consideration of these arguments, we agree with plaintiffs.

The parol evidence rule provides that, where a writing is on its face clear, explicit and complete, it is conclusively held that the writing contains the whole contract and is the sole evidence of the Agreement. *Durham v. National Pool Equip. Co.*, 205 Va. 441, 446, 138 S.E.2d 55, 59 (1964). For parol evidence to come in, it must appear from the face of the instrument itself that it does not embody the entire understanding. Parol evidence may be allowed, not to contradict or vary the terms, but to establish the real contract between the parties. *Prospect Dev. Co. v. Bershader*, 258 Va. 75, 515 S.E.2d 291 (1999). Professor Charles E. Friend in *The Law of Evidence in Virginia* (6th Ed.), § 20-2, notes that the parol evidence rule applies only when (a) the written instrument is intended by the parties as the complete, final, "integrated" embodiment of the contract or (b) when the language of the integrated written instrument is "unambiguous." In the same section, Professor Friend notes that the Rule does not prohibit evidence of conditions precedent to the operation of the instrument or re-examination of factual recitals in the instrument.

Taking all allegations in the Bill as true, we find that there are sufficient facts pleaded to show an ambiguity on the face of § 13.C of the Agreement. It states that Braun and Clarke are to remain directors so long as any purchaser owns stock in Comtel for the stated purpose of representing the interest of the purchasers. This would presuppose that Braun and Clarke live and serve as directors for an indefinite period ending only when the last

---

[1] Commonwealth Telecommunications Company was also a seller party in the Agreement, but is not named as a party to this litigation.

plaintiff divests himself or herself of the last share of minority stock. Any contrary occurrence, whether arising from the death or resignation of Braun or Clarke or both, would render meaningless contract language which according to its plain meaning provides that there shall be representation of minority shareholder interest on the board so long as any one of them owns stock. If either Braun or Clarke or both were to be replaced with a "majority" director or directors, representation of minority stockholders would be diluted or eliminated. This, at a minimum, raises an implication that there was some provision about the successor of minority directors not integrated into the Agreement language.

Plaintiffs do not argue any specific Agreement language limiting the number of directors to three only. They do allege in their Bill that such limitation was part of the Solicitation (BOC ¶ 11) and that the Agreement includes the Solicitation. (BOC ¶ 13.) Plaintiffs also argue that, although they have none in their possession, written solicitation documents may exist and could be in the possession of the defendants. Defendants argue that the lack of any mention of the number of directors in the written Agreement creates a hole thus disallowing any admittance of parol evidence on such point. We disagree with defendants. In *Shevel's, Inc. v. Southeastern Assoc.*, 228 Va. 175, 320 S.E.2d 339 (1984) (tenant had a written lease with landlord which provided tenant would join and pay dues to merchant's association, tenant refused to pay when dues increased contending it had an agreement on limitation of dues with landlord about which the lease was silent, held parol evidence admissible even where lease contained integration clause, to prove agreement), a case similar to ours, parol evidence was allowed to show an agreement, not contained in the lease to establish the parties' true agreement, where the tenant did not seek to vary or explain, by parol, the terms of the written lease. See also *J. E. Robert Co. v. J. Robert Co., Inc.*, 231 Va. 338 (1986).

Defendants' argue second that, although the Agreement in § 13.K states that it constitutes an agreement among stockholders as provided in the Code of Virginia, it is not valid because Va. Code § 13.1-671.1(B)(1)(b) states that shareholder agreements shall be set forth in a written agreement signed by all persons who are shareholders at the time of the Agreement. While plaintiffs' Bill alleges Humphreys' signed the Agreement (BOC ¶ 12), the Agreement (BOC Exhibit 1) clearly shows he did so solely as President of Comtel and not in his individual capacity. The plaintiffs have not pleaded any claim pursuant to Va. Code § 13.1-671.1(B)(1)(a), which provides alternate means to create a shareholder agreement. This Code provision states alternatively that a

shareholder agreement "shall be set forth in the articles of incorporation or bylaws and approved by all persons who are shareholders at the time of the Agreement."

Virginia stock corporations are creatures of statute, specifically Chapter 9 of Title 13.1. This Title regulates how stock corporations are created and operate inclusive of the respective rights and duties of shareholders, directors, officers, and so forth. Under this scheme, owners of shares vote them, one share one vote. Shareholders elect directors. All the rights to which plaintiffs seek declaratory judgment are contained in Va. Code § 13.1-671.1. (See Va. Code § 13.1-671.1(A)(3), (4), (6), and (8).) As far as the Court can discern, the General Assembly has made this code section the exclusive means of effecting shareholders' rights to elect directors. Taking every allegation in the Bill as true, the Court cannot construe plaintiffs' Bill to allege that, at the time the Agreement was made, Humphreys signed it individually as majority shareholder. As shown on plaintiffs' Exhibit 1, he signed only as president of Comtel.

Plaintiffs argue that their agreement just with Comtel could grant them control over the size of the board of directors and special rights to elect directors as minority shareholders. We disagree. This would be in contradiction to the scheme of Chapter 9 of Title 13.1 and specifically the provisions of Va. Code § 13.1-671.1. The Court is unaware of any authority which would support the contention that such an agreement could affect shareholder votes in the manner plaintiffs wish.

The Court cannot under the facts pleaded legally impute the obligations of the corporation entered into under the Agreement to Humphreys. The corporation and Humphreys are separate entities. There are no allegations that the corporation is the alter ego of Humphreys or is a sham. There are no facts alleged which would create grounds for the Court's piercing the corporate veil in order to make Humphreys individually responsible for the contractual obligations of Comtel.

## (2) *Advisory Opinions*

Defendants' Demurrers also seek to dismiss the plaintiffs' Bill because it fails to set forth a justiciable controversy which is ripe for decision. Defendants argue that plaintiffs merely seek an advisory opinion. We disagree.

Declaratory judgments are statutory actions. (Article 17 of Chapter 3 in Title 8.01, Va. Code §§ 8.01-184 to 8.01-191.) A declaratory judgment action lies "in cases of actual controversy" allowing circuit courts "to make binding adjudications of right" and it is specifically provided that such actions may

involve interpretation of "instruments of writing." Va. Code § 8.01-184. It has been held that, generally, the law of declaratory judgments "is to be liberally interpreted and administered with the view to making the courts more serviceable to the people." Va. Code § 8.01-191. See *Board of Supvrs. v. Southland Corp.*, 224 Va. 514, 297 S.E.2d 718 (1982). The controversy must be justiciable, i.e. involving specific adverse claims based upon present rather than future speculative facts which are ripe for judicial adjudication. *Reisen v. Aetna Life & Casualty Co.*, 225 Va. 327, 302 S.E.2d 529 (1983). Courts are not to render advisory opinions, decide moot questions, or answer merely speculative inquiries. *Reisen, id.*

Although plaintiffs do not set forth word for word the specific declaratory judgment they seek from the Court, the plaintiffs' Bill establishes specific adverse claims based on present facts related to the minority shareholders' claim of right to elect two directors, with the overall board membership limited to only three people. Plaintiffs have alleged the majority shareholder's election of a non-minority director over their protests and have further alleged that the majority shareholder has asserted the right to appoint to the board anyone he wants and that an agreement limiting the number of directors does not exist.

## Motions Craving Oyer

The two Motions Craving Oyer filed by each defendant are identical. The Court acknowledges that it was stated in oral argument that defendants sent plaintiffs' counsel copies of the full Agreement (including all attachments thereto which were omitted in plaintiffs' Exhibit 1), a Subscription Agreement dated October 17, 1999 ("Subscription Agreement"), and corporate Articles of Incorporation and Bylaws. These same documents were attached to Defendants' Joint Reply to Plaintiffs' Response to Defendants' Motions to Crave Oyer and Demurrers ("Joint Reply"). There was further discussion regarding other documentation provided by defendants to plaintiffs in response to plaintiffs' discovery. Plaintiffs' counsel represented to the Court that part of such response had only reached him shortly before the hearing. Counsel for the defendants wanted the Court to consider the documents attached to their Joint Reply in its consideration of the Demurrer. Counsel for the plaintiff argued early on that the Agreement was the only document his clients could produce, and, therefore, it was the only document specifically pleaded in the Bill. Plaintiffs did not seek leave of court to amend their Bill prior to the hearing on the Demurrer. As indicated previously, since, on a

Demurrer, only those matters alleged in the Bill are proper for consideration, the Court for the purpose of these proceedings limited its consideration of documents to the Agreement, the only written instrument specifically pleaded.

Disposition of the Motions Craving Oyer is included in the Court's ruling stated below.

## Conclusion

The Court for the reasons stated herein sustains defendants' Demurrers. The Court grants leave to plaintiffs to file amended pleadings herein according to the following procedure: (a) within ten days of the entry of a Decree reflecting the Court's judgment as set forth in this letter opinion, plaintiffs shall notify defendants in writing whether they intend to file amended pleadings, (b) if plaintiffs do intend to replead, then, within ten days of receipt of such notice, counsel for the parties shall meet and exchange lists of all instruments of writing which each such party has in their possession pertaining to the rights or claims of rights made herein by plaintiffs or relating to the denial of such rights or claims by defendants, (c) if they have not already done so, then within ten days after exchanging such lists counsel for each party shall provide to other counsel a copy of any document on their list which such other counsel does not have, (d) within twenty-one days after the exchange of lists and documents, plaintiffs may file amended pleadings herein, and (e) within twenty-one days after the receipt of such amended pleadings, defendants may file such responsive pleadings as they may be advised. The purpose of this procedure is for the parties to exchange all relevant information which would be produced in response to defendants' Motion Craving Oyer and plaintiffs' discovery heretofore propounded in an economical and cooperative manner, so that the same documentation shall be before all parties prior to the filing of any amended pleadings.

January 19, 2007

This matter came to be heard upon the Demurrers filed by defendants to plaintiffs' Amended Bill of Complaint ("ABOC") filed pursuant to the Order of this Court entered March 22, 2006.

Plaintiffs are investors and minority stockholders in defendant Comtel, Inc., and Commonwealth Telecommunications Corporation ("CTC"), sometimes collectively referred to as "the Companies," both of which are Virginia stock corporations. The defendant, Benjamin R. Humphreys, Jr., is the majority shareholder, a director, and president of both corporations.

Plaintiffs' ABOC asks judicial interpretation of a Stock Purchase Agreement, a Subscription Agreement ("SA") both dated October 17, 1999, and other related documents.

The ABOC contains six counts pursuant to which plaintiffs seek declaratory judgment in Count I, that the SPA and SA constitute a legal and binding agreement among stockholders, that the SPA is effective to limit the Board of Directors of each company to three with two directors being selected by or acceptable to the minority shareholders to represent their interest as long as any one of them owns stock in either company, and that unanimous approval of the Board of Directors is required for the issuance of any additional stock; in Count II, that Humphreys owns only 350 shares of stock in each corporation; in Count III, that the "Interim Buy-Sell Agreement" contained in the Consent of the Sole Shareholder and Director of Comtel, Inc. (the "Consent") is only effective and binding on Humphreys and his shares, but not effective or binding on the minority shareholders and their shares; in Count IV, that, alternatively, the SPA and SA failed to be fully executed and become effective due to the defendant Humphreys not signing the agreement in his capacity as a shareholder; in Count V, that, alternatively, the SPA and SA are void *ab initio* because of certain misrepresentations and the failure of certain conditions and inducements; and in Count VI, that, alternatively, the subscription of stock was never closed or never became effective under the SPA and SA due to the failure to obtain the required minimum subscription on the specified Admission Date.

## Demurrer

Upon consideration of a demurrer, the Court accepts all facts alleged in or reasonably inferable from the plaintiffs' pleading to be true. The Court does not evaluate and decide the merits of a claim, it only tests the sufficiency of factual allegations to determine whether the plaintiffs' pleadings state a cause of action. *West Virginia Properties, Inc. v. First Va. Mtg. & Real Estate Inv. Trust,* 221 Va. 134, 267 S.E.2d 149 (1980); *Board of Supvrs. v. Southland Corp.,* 224 Va. 514, 297 S.E.2d 718 (1982). The mention in a pleading of an accompanying exhibit shall, of itself and without more, make such exhibit a part of the pleading. Rule 1:4(i).

## Prior Proceedings

This Court, in its December 12, 2005, Opinion Letter, limited its consideration of defendants' demurrers to the SPA, the only document specifically identified in the BOC, and the Solicitation alleged to be

incorporated in part in the SPA but primarily consisting of oral representations of certain protections, management oversights, and safeguards for the benefit of the plaintiffs which Humphreys and the Companies were alleged to have made to induce plaintiffs to purchase a minority interest of shares in the Companies. Plaintiffs alleged that central to the Solicitation was the representation that the Boards of Directors were to be limited to three, two of whom were to represent the interest of the minority stockholders. The Court found that (1) there was ambiguity on the face of the SPA about how the Boards of Directors were to be comprised which would be reason for allowing parol evidence at trial, and (2) the SPA as an agreement standing alone, notwithstanding some of its recitations (see, e.g. § 13.K-agreement "shall constitute an agreement among stockholders as provided in the Code of Virginia") was not a valid agreement among shareholders because it failed to satisfy the requirements of Va. Code § 13.1-671.1(B)(1)(b) that a shareholder agreement must be in writing signed by all persons who are shareholders at the time of the agreement.

This Court, as part of its prior Opinion Letter, mandated a procedure for the exchange of all relevant documents in possession of the parties so that the Court and the parties would have all such documents before them in subsequent proceedings. The Court specifically granted the plaintiffs leave to file an Amended Bill of Complaint. Further consideration of whether there is a valid shareholders agreement has not been foreclosed by this Court. In accordance with the allegations in the ABOC, the Court now considers the Solicitation, the SA, the Consent, the SPA, and additional documents alleged by plaintiffs. As required in consideration of any demurrer, the Court limits its inquiry about whether the ABOC states a cause of action for which relief may be granted to the specific grounds stated in the defendants' demurrer. Va. Code § 8.01-273.

*Analysis*

Although plaintiffs' claims are now in six counts, they generally embrace two theories. The first is that the SPA, when considered in conjunction with other documents not previously before the Court, satisfies the requirements of Va. Code § 13.671.1(B)(1)(b), which mandates that a shareholder agreement be in writing and signed by all shareholders. As a second prong of the first theory, plaintiffs claim that Humphreys' status as a third-party beneficiary under certain provisions of the SPA binds him as a party to the SPA thus rendering it a valid statutory shareholder agreement.

The second theory advanced by plaintiffs in the ABOC is that, if there is no valid shareholder agreement, then the "essential purpose" of such agreement has failed and it is void. Plaintiffs allege such purpose was the protection of the minority shareholders' interest through their control of the boards of directors and the provision that no additional stock could be issued without the unanimous consent of the directors. Plaintiffs in Counts IV, V, and VI of the ABOC allege various claims, any one of which, they argue, would render the agreement for the sale of stock to the plaintiffs of no effect, thereby allowing rescission of the stock subscription or rendering it void, entitling the plaintiffs to a refund of their purchase money.

## 1. *Grounds of Demurrers*

Defendants' demurrer on the grounds that there is no valid shareholders agreement which satisfies statutory requirements and that plaintiffs cannot in contradiction to the agreements in evidence or in reliance on matters not referenced in such agreements void their terms. As specified in their demurrers, the defendants further assert that certain matters raised by plaintiffs are not justiciable in this declaratory judgment action.

## 2. *Allegations That There Is a Valid Shareholders Agreement*

### (a) *The Consent of the Sole Shareholder and Director of Comtel, Inc.*

Va. Code § 13.1-671.1(B)(1)(b) contains a clear mandate. As the Court stated in its prior Opinion Letter, the SPA, as a stand-alone document, does not constitute a valid shareholder agreement under Virginia law. Plaintiffs argue that Humphreys' signature to the Consent dated October 20, 1999, satisfies the "technical" requirement that he sign the SPA as shareholder of Comtel.

The Consent is a statutory device pursuant to Va. Code §§ 13.1-657 and 13.1-685 by which corporate action required or permitted to be taken at a meeting of shareholders or a meeting of a board of directors may be taken without a meeting and without any required notice by consent of all shareholders or all directors. It is frequently employed for obvious reasons by corporations having one stockholder and one director.

The Consent was signed by Humphreys individually. It contains a resolution whereby Humphreys as sole shareholder and director authorizes Humphreys as president of Comtel to sign agreements and grant assurances necessary to sell the stock of the company. Part of the language in such resolution states that all previous actions regarding the sale "are hereby

approved, ratified, and confirmed." Plaintiffs argue that Humphreys' signature on the Consent containing this resolution amounts to an agreement by Humphreys to be individually bound to the SPA and satisfies the statutory requirement that he sign the shareholder agreement individually. The Court disagrees. The resolution is an authorization to Humphreys as president of Comtel. It does not make his signature as president on the SPA or any other agreement the de facto signature of Humphreys individually. The approval, ratification, and confirmation contained in the resolution refers to shareholder approval of actions by the president, not to acts by Humphreys individually. The contrary interpretation argued by plaintiffs would make the stockholder personally liable for acts of the company president every time a shareholder consent action authorized the president to act on behalf of the company and approved, ratified, and confirmed such acts. The Court finds that Humphreys' actions as company president authorized in the resolution in the Consent of shareholders and directors did not make him individually liable for such actions nor did it make him a party to or a signatory of the SPA.

#### (b) *Humphreys as a Third-Party Beneficiary*

Plaintiffs also argue that, because Humphreys is a third-party beneficiary under the SPA (for example § 13.A grants Humphreys the right to an employment contract and § 13.E gives Humphreys a right of first refusal when a minority stockholder sells stock), he is a party to the SPA. They reason that, since Humphreys personally enjoys an "advantage" under such provisions, he should not be able to deny that he is bound by the terms of the entire agreement. The Court agrees that Humphreys is a third-party beneficiary. The Court disagrees that such status makes him a party to the whole SPA. The right of a third-party beneficiary under the law, as this Court understands it, is to bring a cause of action in his own name against the parties to the contract only upon the specific rights given him as a third party beneficiary. It does not make him a party to the whole contract to which he is not a named party and has no privity. There is furthermore no provision in the law of which this Court is aware that a third-party beneficiary must sign an agreement. See 4A M.J., *Contracts,* § 81 (1999).

### 3. *Effect of the Solicitation*

Under the standard of a demurrer, the Court accepts as true all of plaintiffs' allegations regarding oral representations made by Humphreys as an inducement to the plaintiffs to become minority shareholders in the

companies. The main inducement is what plaintiffs allege is memorialized in § 13.C (two directors to represent the interests of the minority shareholders) and § 13.O (companies to issue no further stock without the unanimous approval of the Board of Directors) of the SPA. This Court has previously ruled that the language of § 13.C is sufficiently ambiguous to allow parol evidence to establish the intent of the parties.

The problem with declaring the SPA a valid shareholder agreement, as the plaintiffs wish, is that, regardless of what Humphreys may have orally represented, he is not individually a party or a signatory to the written SPA or the written SA. Parol evidence may indeed show intention that the minority shareholders control the board of directors of each company. This would not, as plaintiffs have pleaded, permit the Court to make the SPA a valid shareholders agreement by making Humphreys an individual named party and conjuring his signature in an individual capacity to such document. The Court, notwithstanding the Solicitation, cannot change a document to make a party of a person who is not a party and cannot create a signature where there is not a signature.

*4. Claims That, If There Was No Valid Stockholder Agreement, the Stock Subscription Failed*

The second theory advanced by plaintiffs is that, if there is not a valid shareholder agreement, then the entire sale of stock to the minority shareholders is void or of no effect and plaintiffs are entitled to get their money back. The plaintiffs set forth this claim in three alternatives (or "options") in Counts IV through VI of the ABOC. They allege that they would not have purchased their stock but for the inducements made to them by Humphreys individually which can only have effect if contained in a valid shareholders agreement. Thus, if the SPA fails as a valid shareholders agreement either because it was not fully executed as intended or was void *ab initio* because of misrepresentations and failure of certain conditions and inducements or because of the failure to obtain a minimum subscription by the admission date as provided in the SA, the whole stock subscription failed.

Both parties reel off provision after provision contained in the SPA, the SA, or other documents to support or oppose the claim that the stock subscription failed in totality and is null and void upon the grounds alleged in Counts IV through VI of the ABOC. Defendants, for example, reference SPA § 4 (records provided), § 7.A (sophisticated investors; own independent investigation; not relying on any representations of the Companies,

Humphreys, or Braun), § 13.I (entire agreement), and § 13.L (fully severable) and SA § 3(a) (furnished and read all information), § 3(b) (opportunity to obtain further information), § 3(d) (sophisticated investors), § 9 (SA fully severable), and § 10 (entire agreement) in opposition to recession or the contention the stock subscription failed. Plaintiffs reference SPA § 13.A (Humphreys employment agreement), § 13.B ("agreements" not effective until all executed), § 13.C (two on the board of directors for the benefit of the minority shareholders), § 13.D (minority shareholders irrevocable proxy), § 13.E (minority shareholders grant of right of first refusal to Humphreys), § 13.F (further assurances), § 13.I (entire agreement), § 13.K (agreement among shareholders), § 13.L (severability, with automatic addition of similar terms), § 13.N (execution in counterparts), and § 13.O (no further issuance of shares without unanimous approval of board of directors) and SA § 1 (Admission Date no later than December 20, 1999) and § 2 (at least 130 shares to be subscribed by Admission Date or funds returned) in support of their argument that the subscription failed.

While it may be said the SPA and SA are not particularly well drafted, they do contemplate certain conditions as prerequisites to closing the stock subscription, (e.g. having the subscription fully funded and having a company lawyer's "corporation in good standing" opinion letter by the Admission Date). At issue is whether the essential purpose of the entire agreement between the parties was to effect a stock sale from the company to the minority shareholders to give the company a critically needed infusion of cash or to have such a sale only pursuant to a valid agreement which assured certain protections to minority shareholders who were contemplating making a significant investment in a risky venture.

Plaintiffs' allegations are that representations made in the Solicitation were not correctly, completely, or accurately set out in the writing and were, moreover, given an entirety unintended interpretation by Humphreys upon the resignation of Braun, thereby so undermining the substance of the bargain that the essential purpose of the agreement failed, rendering it of no effect and entitling the minority shareholders to a refund.

Facts similar to those in the previous paragraph have been recognized as grounds for equitable relief. See *Matzelle v. Pratt*, 332 F. Supp. 1010 (E.D. Va. 1971). Such claims must be balanced, however, in the sound discretion of the court against other considerations. For example, mere breach of provisions incidental to the main purpose of the contract do not warrant cancellation. *United States v. Snapp*, 595 F.2d 926 (4th Cir. 1971). Equitable relief does not lie where there is an adequate, complete legal remedy. Prompt action is

essential; the doctrine of laches applies. Yet, reasonable diligence depends on the circumstances of the case. See *Potter v. Matheson Alkali Works*, 165 Va. 196, 181 S.E.2d (1935); *Branch v. Berkley*, 109 Va. 784, 65 S.E. 652 (1909).

In cases of plain mistake or misapprehension, though not the effect of fraud or contrivance, equity may rescind the contract. The mutual mistake for which equity will rescind a contract may be common to both parties to a transaction and may consist either in the expression of their agreement or in some matter inducing or influencing the agreement or in some matter to which the agreement is to be applied. *Briggs v. Watkins*, 112 Va. 14, 70 S.E. 551 (1911). The negligent failure of a party to know or discover the facts, as to which both parties are under a mistake, does not preclude rescission on account thereof. *Banker's Fire Ins. Co. v. Henderson*, 196 Va. 195, 83 S.E.2d 424 (1954).

## 5. *Justiciable Issues*

Defendants again raise questions regarding whether those matters upon which plaintiffs seek declaratory judgment are justiciable, which is to say proper matter for the Court to consider in a declaratory judgment. Reference is here made to the second paragraph in provision "(2) Advisory Opinions" of this Court's Opinion Letter, dated December 12, 2005, for the purpose of this Court's statement of the nature and effect of declaratory judgment.

The specific matters raised regarding justiciable issues are as follows.

### (a) *Selection of Successor Director to Braun*

This matter was addressed in the Court's original Opinion Letter. Defendants have raised a further issue arguing that plaintiffs' use of language in the ABOC that the minority shareholders are to have two directors who must be "selected by and acceptable to them" requires that they select one of two different methods implied by such language which plaintiffs contend was part of the solicitation which they allege was incorporated, at least in part, in § 13.C of the SPA. The Court declines to put the plaintiffs to an election and leaves for discovery whatever clarification may be made to these words. This Court has ruled that parol evidence is admissible for purposes of determining the intention of the parties in § 13.C of the SPA. The determination of such meaning is a justiciable issue for purposes of declaratory judgment.

(b) *Selection of Successor Director to Clarke: "Minority" Directors*

Defendants argue that Humphreys' appointment of a successor director to Braun does not make a justiciable issue of the appointment of a successor to Clarke. The Court holds it not necessary for Humphreys to have made any move to replace Clarke with another director. It is enough that Humphreys selected Braun's successor without consulting plaintiffs. He necessarily ascribes himself the right to do the same with selection of a successor to Clarke. This is a real issue because, by replacing Clarke, the board would be entirely selected by Humphreys with no minority directors. This would completely remove the protection that the minority shareholders seemingly have under § 13.O of the SPA, which prohibits the issuance of stock without the unanimous agreement of all directors. This is a justiciable issue.

(c) *Humphreys Right of First Refusal ("Buy-Sell") on Sale Minority Owned Stock*

Humphreys has stock purchase rights under § 13.E of the SPA as well as under the interim Buy-Sell Agreement contained in the Consent. Plaintiffs seek declaratory judgment that the latter effects the stock of Humphreys, but not the stock of the minority shareholders. Defendants question whether this is a justiciable issue since no purchase right was exercised by Humphreys when Braun sold his shares to Horn and when Horn ostensively sold the stock again. The Court admits some difficulty in understanding what the actual difference may be between the right of first refusal to which plaintiffs have consented under § 13.E and the rights of purchase under the interim Buy-Sell Agreement in the Consent. Even assuming Humphreys exercised some right under either provision, the sale of some, but not all, of the minority stock to Humphreys would not change the rights of the remaining minority shareholders. Such rights, as claimed under the SPA continue undiminished as long as one minority shareholder holds one share of stock in either of the Companies. It is questionable what rights are threatened or jeopardized. While there could be some issue regarding this matter in the future, the Court does not see a justiciable issue at the present time, since, even without the interim Buy-Sell in the Consent, Humphreys has the right of first refusal under § 13.E of the SPA. Plaintiffs also have consented to such provision being inserted into and made a part of any future Buy-Sell Agreement. The buy-sell rights of Humphreys are not justiciable issues for the purpose of this suit.

### (d) *Humphreys Is the Owner of 350 Shares of Each Company*

This is not a justiciable matter because the defendants admit this is the fact. There is nothing here to dispute.

### (e) *The Horne Plaintiffs*

The Hornes have either withdrawn or been removed as plaintiffs to this proceeding. There is accordingly no justiciable issue regarding these parties. Any question of the Horne plaintiffs' paying expenses to the defendants is a matter reserved for subsequent determination by the Court.

### *Summary*

The Court's ruling on the Demurrer to plaintiffs' six counts are as follows.

Count I: The Court sustains the defendants' Demurrer that plaintiffs have failed to allege a valid written shareholder agreement because Humphreys was neither a party to the agreement nor signed it.

Count II: Defendants' Demurrer with respect to this count is moot. Plaintiffs sought declaratory judgment that Humphreys is the owner of only 350 shares each of Comtel and of CTC. Defendants admit that Humphreys owns only those shares.

Count III: Defendants' Demurrer is sustained because the Court finds there is not now a justiciable issue regarding Humphreys' right of first refusal.

Counts IV, V, and VI: Defendants' Demurrers to these counts are overruled. The issues raised in such counts are justiciable and are subject to declaratory judgment by the court.

The Court directs that, after the entry of the Decree, the parties will schedule a pretrial conference with the Court prior to this matter being set for trial.